Thomas F. **MITCHELL**, Jr.

v.

Edward R. **MURRAY**, Director, et al.

Civ. A. No. 3:93CV90.

United States District Court,
E.D. Virginia,
Richmond Division.

June 7, 1994.

290

Thomas F. Mitchell, pro se.

Pamela Anne Sargent, Office of the Atty. Gen. of Virginia, Richmond, VA, for defendants.

### MEMORANDUM

LOWE, United States Magistrate Judge.

Thomas F. Mitchell, Jr., a Virginia state prisoner, brings this Section 1983 action *pro se* and *in forma pauperis* alleging denials of due process of law, and denial of access to the courts. Jurisdiction is appropriate pursuant to 28 U.S.C. § 1343. Defendants have filed their motion for summary judgment to which plaintiff has responded. Plaintiff has also filed a motion for summary judgment. For purposes of ruling on defendants' motion, all disputed facts have been resolved in favor of plaintiff.

On September 25, 1991, plaintiff was removed from his job assignment in the Enterprise woodshop at the Greensville Correctional Center and placed in administrative segregation. He was advised the transfer was because he was suspected of manufacturing a weapon on the job. On September 27, 1991, the Institutional Classification Committee (ICC) conducted a formal hearing to review the assignment. The composition of the Committee did not comport with the directives of Institutional Operating Procedure (IOP) 821. In addition, no reporting officer was present nor was a sworn statement read into the record as required by Virginia Department of Corrections Division Operating Procedure (DOP) 821.VII.E.2.b.v. The Committee approved detention pending completion of the investigation. The investigation was completed on October 15, 1991. The ICC met on October 24, 1991, and recommended plaintiff be released back to the general population. He was not released, however, until October 28, 1991.

In the meantime, on September 28, 1991, plaintiff received a decision and order of the United States Court of Appeals for the Fourth Circuit issued September 26, 1991, in *Mitchell v. Williams,* No. 91–7597, 1991 WL 190275 (4th Cir. September 26, 1991) (U.P.). Plaintiff wanted to file a petition for rehearing and sought access to legal materials and assistance from inmate law library clerk R.E. Harraway. It was not until October 9, 1991, that he received the legal materials he requested. He was not provided the assistance of inmate clerk Harraway. Furthermore, plaintiff's requests for additional law books were denied despite filing an emergency grievance. On October 10, 1991, Harraway was brought to plaintiff and, on defendant McMillan's advice, plaintiff turned over his legal materials to Harraway. Harraway promised to take care of the matter.

On October 28, 1991, plaintiff was released from detention and assigned to a cell occupied by inmate Brown. Plaintiff and Brown had had previous problems although plaintiff did not claim they were enemies. Plaintiff refused the assignment and demanded he be taken into protective custody. Instead, plaintiff was ordered to accept the assignment. When he refused, plaintiff was given an institutional charge for refusing a direct order. He was returned to segregation in prehearing detention. The ICC met to consider plaintiff's detention status on October 29, 1991, and recommended release.

Following release, on October 30, 1991, plaintiff actively sought return to his job. He was consistently rebuffed. Because there had been no ICC hearing to review his job status, plaintiff filed a grievance on November 7, 1991. On November 18, 1991, plaintiff was advised that an ICC hearing had been scheduled. He was advised it would be in his best interest not to proceed with the grievance. Plaintiff continued to pursue the grievance procedure. He never received the ICC hearing and has not been allowed to return to his former job.

On February 5, 1991, the ICC met to review plaintiff's good conduct allowance (GCA) and custody level status. At that time, plaintiff's file contained a record of the October 28, 1991, charge of disobeying an order and information that plaintiff had been in prehearing detention on the charge. Defendant R. Tillery, a Rehabilitation Counselor, mistook the charge and detention to indicate plaintiff had been convicted of an institutional infraction. In completing a worksheet for consideration by the ICC he erroneously subtracted 5 points because of the conviction,

yielding an overall score of 53. The ICC subsequently placed plaintiff in Category III for the purpose of earning GCA.

Similarly, because Tillery misinterpreted the record, plaintiff received an overall score of 27 on his Reclassification Study Scoring sheet. Had the erroneous information not been contained in plaintiff's file, the score would have been 22. Plaintiff remained in C custody. Plaintiff has been unable to have the record of the October 28, 1991, charge and detention deleted from his prison file despite his repeated requests.

Moreover, despite plaintiff's grievances, nobody has adequately investigated his complaints or afforded him any semblance of relief.

Liberally construing plaintiff's particularized complaint he appears to raise the following claims:[1]

1. Plaintiff was denied due process of law when he was confined in administrative segregation because the ICC hearing of September 27, 1991, was not held in conformity with DOP 821 and IOP 821.

2. Plaintiff was not timely released from administrative segregation as soon as the investigation of the allegations against him had been completed.

3. Defendants were deliberately indifferent to a known risk of harm when they attempted to force plaintiff into accepting a cellmate with whom he had previously had trouble.

4. Plaintiff was denied due process when defendants charged plaintiff with failing to obey an order that he enter his assigned cell on December 28, 1991.

5. Plaintiff was denied due process when he was placed in prehearing detention based on the charge of refusing to obey an order.

6. Plaintiff was denied access to the courts from September 28, 1991, through October 30, 1991.

7. Plaintiff was denied due process of law when he was not permitted to return to his pre-detention job at the Enterprise workshop.

8. Defendants retaliated against plaintiff for grieving the failure to hold an ICC hearing on his job removal by refusing to convene an ICC hearing and by forging his name to a document showing such a hearing had been held.

9. Plaintiff was denied due process on February 5, 1992, when the ICC determined plaintiff's GCA would be awarded at level III.

10. Plaintiff was denied due process on February 5, 1992, when the ICC determined plaintiff's custody status would remain in "C."

11. Plaintiff has been denied due process because defendants have failed to expunge the October 28, 1991, charge and detention from his files.

12. Defendants have refused to investigate adequately the matters alleged in his grievances.

■ Claims 1 and 2 involve plaintiff's complaints that plaintiff was denied due process of law when he was assigned to and retained in administrative segregation. In Virginia, "segregation" status is not a custody level, DOP 823.VIII.A.5, nor is it a punishment. DOP 861.1.VII.B.2. Assignment to segregation is governed by DOP 821. *See* DOP 861.1.VII.B.1. DOP 821 sets forth the procedures to be followed in the classification and management of inmates. Under DOP 821 an Institutional Classification Committee is charged with conducting hearings and making recommendations concerning inmate housing assignments, transfers, job or work

---

1. The claims are taken from the particularized complaint only. In his opposition to defendant's motion for summary judgment plaintiff has made a general statement that all claims were intended to include claims of retaliation and denial of equal protection. In his motion for summary judgment plaintiff has further attempted to expand his claims to include a conspiracy to cover

up, etc. The defendants filed their answer on December 9, 1993. Accordingly, an amended complaint may only be filed with leave of court. Fed.R.Civ.P. 15. Plaintiff has not sought leave to file such a complaint and his allegations not contained in the particularized complaint will not be further considered.

assignments, etc. In some instances the final decision (*i.e.,* approval of a recommendation) is made by the Central Classification Bureau (CCB). DOP 821.VII.D.6. In others the Warden has final authority. DOP 821.-VII.D.7. It is clear that the ICC makes only recommendations. Whether or not a recommendation will be followed is discretionary with either the CCB or the Warden. It follows that Virginia's regulatory scheme for assignment retention and release from administrative segregation does not create a liberty interest. *See Slezak v. Evatt,* 21 F.3d 590 (4th Cir.1994); *Bartholomew v. Clawson,* 594 F.Supp. 1121 (E.D.Va.1984). Claims 1 and 2 will be dismissed.

■ In claim 3 plaintiff asserts defendants were deliberately indifferent to a known risk of harm when they assigned him to a cell with an inmate with whom he had previously had problems. Prison officials may not remain deliberately indifferent to a specific known risk of harm to an inmate. *Pressly v. Hutto,* 816 F.2d 977 (4th Cir.1987). But, to state an Eighth Amendment claim, an inmate must demonstrate he has suffered some harm from the alleged indifference. *Shrader v. White,* 761 F.2d 975 (4th Cir. 1985). Plaintiff has not demonstrated the requisite harm to establish his claim. Claim 3 will be dismissed.

■ Next, plaintiff claims he was denied due process when he was charged with refusing an order to enter his assigned cell. As a result of the charge, plaintiff was assigned to prehearing detention for two days. Importantly, plaintiff lost no good time, nor was he otherwise subjected to punishment for the alleged infraction.[2] Accordingly, plaintiff had no liberty interests at stake by either the charge or his detention. *See Gaston v. Taylor,* 946 F.2d 340 (4th Cir.1991) (en banc). Claims 4 and 5 will be dismissed.

**2.** Prehearing detention is not punishment. It is: special purpose bed assignments, utilized under proper administrative process, at major institutions and field units within the Division of Adult Institutions for the immediate secure confinement of inmates pending assignment to either isolation or segregation, or return to the general population.

■ In claim 6 plaintiff asserts he was denied access to the courts from September 28, 1991, through October 30, 1991, because he was not allowed access to the law library. Plaintiff has failed to allege that any legal action, pending or contemplated, suffered from the alleged denial of access to the law library. *See Magee v. Waters,* 810 F.2d 451, 452–53 (4th Cir.1987) (where plaintiff has not indicated any actual or specific harm that has resulted from limited access to law library, no constitutional deprivation has occurred within the meaning of *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)). He has made an obscure reference to a case in which he wanted to file a petition for rehearing, *Mitchell v. Williams,* No. 91–7597, 1991 WL 190275 (4th Cir.1991) (UP). The records in that case establish petitioner filed a motion for extension of time to file for rehearing. The motion was denied on October 15, 1991, but plaintiff was specifically advised the denial was without prejudice to resubmitting the motion with his petition for rehearing. Plaintiff filed nothing further.[3] He cannot establish prejudice in that case. Claim 6 will be denied.

■ Plaintiff asserts he was denied due process of law when the defendants failed to return him to his pre-segregation job. Inmates do not have a fundamental constitutional right to any specific work assignment. *Altizer v. Paderick,* 569 F.2d 812 (4th Cir.), *cert. denied,* 435 U.S. 1009, 98 S.Ct. 1882, 56 L.Ed.2d 391 (1978). All job assignments are made pursuant to ICC recommendations under DOP 821.VII.D.6.b. Because such assignments are always subject to approval by the Warden, DOP 821 does not create a liberty or property interest in any specific job. Accordingly, the refusal of the defendants to return plaintiff to his pre-detention job or to conduct a "due process" ICC hearing did not deprive plaintiff of any constitu-

DOP 861.1.V.C.

**3.** The facts relating to plaintiff's case in the Fourth Circuit have been determined from that record itself, a public record of which the Court takes judicial notice.

tionally protected right. Claim 7 will be dismissed.

■ Similarly, claim 8, in which plaintiff claims defendants retaliated for his filing a grievance, will be dismissed. To establish a retaliation claim, a plaintiff must show that he suffered some harm in response to the exercise of a constitutionally protected right. *See ACLU v. Wicomico County, Maryland,* 999 F.2d 780, 784–85 (4th Cir.1993). Any relief afforded under Virginia's inmate grievance procedure is entirely discretionary. *See* Departmental Operating Procedure 10. Accordingly, plaintiff has no constitutionally protected interest in filing a grievance. *See Spencer v. Moore,* 638 F.Supp. 315, 316 (E.D.Mo.1986). Claim 8 will be dismissed.

■ In claim 9 plaintiff alleges he was denied due process of law when the ICC considered erroneous materials in his files when determining his Good Conduct Allowance earning class. Inmates in Virginia may earn credits (GCAs) which reduce the time to satisfy a sentence and one-half of which serves to reduce the inmate's parole eligibility date. DOP 806–7.4. A determination of an inmate's GCA earnings level involves a review of five areas of an inmate's individual adjustment and performance. *See* DOP 806–7.5. Based on the reports received, an inmate is rated and the score he achieves is forwarded to the ICC for a recommendation. A cursory glance at DOP 806 establishes that the bulk of the rating will involve a great deal of discretion by the reporting personnel. Moreover, a GCA level is to be determined by the ICC pursuant to DOP 821. DOP 806–7.16. Again, any ICC action increasing a GCA level is subject to approval by the Warden and the Central Classification Board. Further appeals are available through the inmate grievance system DOP 806.7.18. Because of the exercise of discretion and the opportunities *for* serial review of the ICC recommendations, neither DOP 806 nor DOP 821 create any liberty interest in assignment to any GCA level. Claim 9 will be dismissed.

■ Likewise, Virginia has created no liberty interests in its custody classification

procedures. DOP 823 Governing Classifications vests broad discretion in the Central Classification Bureau. Additionally, actions taken by the CCB may be modified by various administrative officials. DOP 823.II.[4] Claim 10 will be dismissed.

In claim 11, plaintiff asserts that the October 28, 1991, charge of disobeying a direct order should be expunged from his record. Defendants have not addressed the claim. Plaintiff has moved for summary judgment on the claim. However, it is not at all clear at this point that expungement is required. Plaintiff's motion for summary judgment on claim 11 will be denied. Claim 11 will be set for trial.

■ In claim 12 plaintiff asserts that the defendants have failed to follow up and adequately investigate the matters raised in his various grievances. There simply is no fundamental right to a grievance system nor is there a fundamental right requiring prison administrators investigate prisoner complaints. Claim 12 will be dismissed.

In view of the foregoing analysis, plaintiff's motion for summary judgment will also be denied.

An appropriate order shall issue.

### ORDER

In accordance with the accompanying memorandum, it is ORDERED that:

1. Claims 1–10 and 12 of the petition are DISMISSED.

2. Defendants' motion for summary judgment on claim 11 is DENIED.

3. Plaintiff's motion for summary judgment is DENIED.

4. Defendants file their answer to claim 11 within eleven (11) days of the date hereof.

Let the Clerk send a copy of the order and accompanying memorandum to plaintiff and counsel for defendants.

And it is so ORDERED.

---

4. Even if the "improperly considered" material were expunged, plaintiff could not have received

a lower Custody Classification. *See* DOP 823.-VII.C.