**Gregory TREADWELL, Plaintiff,**

v.

**Edward W. MURRAY, Director, Department of Corrections, Robert Kline, Superintendent, Receiving Unit # 30, George Theckepera, Counselor, Receiving Unit # 30, Unknown Physician, Defendants.**

Civ. A. No. 2:93cv951.

United States District Court,
E.D. Virginia,
Norfolk Div.

March 1, 1995.

Gregory A. Treadwell, pro se.

Mark R. Davis, Asst. Atty. Gen., Office of the Atty. Gen., Crim. Law Div., Richmond, VA, for defendants.

### MEMORANDUM OPINION AND DISMISSAL ORDER

REBECCA BEACH SMITH, District Judge.

Plaintiff, a Virginia inmate, brings this *pro se* action under 42 U.S.C. § 1983, to redress an alleged violation of his constitutional rights. Specifically, Plaintiff alleges that between March 17, 1993 and March 26, 1993, an unknown physician gave him an improper medical classification at the time of his initial processing at Field Unit number 30. Am. Compl. ¶ 1. Plaintiff also claims that this improper medical classification prevented him from being eligible for "different types of incarceration ... [including] halfway houses, work release, or road camps." Am. Compl. ¶ 2. Plaintiff seeks appropriate monetary relief for his mental distress. Am. Compl.

On August 4, 1994, Defendants Murray, Kline, and Theckepera filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). By order filed September 7, 1994, the Court gave Plaintiff an opportunity to respond to Defendants' motion to dismiss. On September 19, 1994, Plaintiff filed a motion titled, "Motion to Deny Motion to Dismiss and Stay Proceedings Pending Discovery." Although Plaintiff's motion did not substantively address Defendants' motion to dismiss, Plaintiff submitted an affidavit in support of a stay of proceedings pending

discovery with his motion. By order filed September 27, 1994, the Court denied Plaintiff's motion to stay proceedings pending discovery, and the Court stayed discovery pending resolution of Defendants' motion to dismiss.[1]

## I. Defendants' Motion to Dismiss

### A. Standard of Review

In construing a motion to dismiss, the facts alleged in Plaintiff's *pro se* complaint must be taken as true. *Loe v. Armistead,* 582 F.2d 1291, 1292 (4th Cir.1978), *cert. denied,* 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980). A *pro se* complaint, no matter how unartfully pleaded, must survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam). A *pro se* complaint involving civil rights issues should be liberally construed. *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978). Dismissal may be appropriate where the complaint contains a detailed description of underlying facts which fail to state a viable claim. *Estelle v. Gamble,* 429 U.S. 97, 106–09, 97 S.Ct. 285, 292–93, 50 L.Ed.2d 251 (1976). However, where the complaint is broad, dismissal for failure to state a claim is improper. *Bolding v. Holshouser,* 575 F.2d 461 (4th Cir.), *cert. denied,* 439 U.S. 837, 99 S.Ct. 121, 58 L.Ed.2d 133 (1978). Finally, where a *pro se* complaint contains a potentially cognizable claim, Plaintiff should be allowed to particularize the claim. *Coleman v. Peyton,* 340 F.2d 603, 604 (4th Cir.1965).

### B. Plaintiff's Section 1983 Claims

Plaintiff Treadwell claims that his initial, medical "C" classification at Greensville Correctional Center by the unknown physician deprived Plaintiff of due process afforded to him by the Constitution. Am.Compl. Further, Plaintiff alleges that Defendant Murray failed to oversee his employees and that Defendants Theckepera and Kline allowed the unknown physician to give Plaintiff the "C" medical classification. Am.Compl. ¶ 2. Plaintiff's claim does not really pertain to any medical treatment that he did or did not receive, instead it concerns his placement in maximum security and his denial of different types of incarceration arising out of his "C" classification. In response, Defendants claim that Plaintiff's assertions fail to state a section 1983 claim against them because they did not act to deprive Plaintiff of any rights that he may have had.

In a section 1983 case, a plaintiff must show that a person acting under color of state law deprived the plaintiff of a right protected by the Constitution or the laws of the United States. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254, 101 L.Ed.2d 40 (1988). Plaintiff's claim against Defendants Murray, Kline, and Theckepera fails for two reasons: (1) Plaintiff has not alleged any direct actions taken against him by these Defendants and (2) Plaintiff has not alleged facts supporting a deprivation of a protected liberty interest without due process.

### 1. No Supervisory Liability

Plaintiff has alleged that Defendants Murray, Kline, and Theckepera failed to oversee the operations of their employees. Am.Compl. Plaintiff's entire lawsuit revolves around the allegedly inappropriate medical classification that the unknown physician gave to him and the responsibility of Defendants Murray, Kline, and Theckepera for the implications of the unknown physician's decision. Plaintiff has not alleged that Defendants have taken any direct actions against him. Although Plaintiff's allegations establish the proper framework for liability based on respondeat superior, that theory is not available under section 1983. *Orpiano v. Johnson,* 632 F.2d 1096 (4th Cir.1980), *cert. denied,* 450 U.S. 929, 101 S.Ct. 1387, 67 L.Ed.2d 361 (1981).

---

**1.** On October 6, 1994, the Court received Defendants' response to the Court's September 27, 1994 Order. Because the Court grants Defendants' motion to dismiss, the Court does not address the Defendants' claim that they failed to receive discovery materials.

Instead, Plaintiff must have alleged facts supporting a possible finding that the supervisory defendants conduct rose to "deliberate indifference" or "tacit authorization of the offensive acts" because of the supervisory defendants' knowledge of " 'a pervasive and unreasonable risk of harm.' " *Id.* at 1101; *see Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir.1990). In other words, the Court evaluates whether the Defendants acted "wantonly, obdurately, or with deliberate indifference" and not whether the Defendants acted negligently. *See Moore v. Winebrenner*, 927 F.2d 1312, 1315 (4th Cir.), *cert. denied*, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991). Also, "a pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents." *Orpiano*, 632 F.2d at 1101 (quoting *Withers v. Levine*, 615 F.2d 158, 161 (4th Cir.), *cert. denied*, 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980)). The only specific allegation that Plaintiff has made is that the unknown physician gave him an inappropriate initial medical classification. Although Plaintiff's grievances reflect that he has received another classification and a transfer to another facility, Plaintiff's initial classification, a single event, does not constitute a pervasive risk of harm. *See Orpiano*, 632 F.2d at 1101.

■ Finally, Plaintiff alleges that the failure of Defendants to oversee their employees deprived Plaintiff of a safe and rehabilitative environment. Although the Court liberally construes Plaintiff's *pro se* complaint, the Court need not address tangential claims that may arise out of Plaintiff's complaint when it is clear that the complaint focuses on the Plaintiff's medical classification and the ramifications of that classification. *See Beaudett v. City of Hampton*, 775 F.2d 1274 (4th Cir.1985), *cert. denied*, 475 U.S. 1088, 106 S.Ct. 1475, 89 L.Ed.2d 729 (1986). Therefore, Plaintiff's broad allegations that the Defendants deprived him of a safe and rehabilitative environment fail to state a section 1983 claim based on supervisory liability.

### 2. No Due Process Violation

■ Plaintiff also claims that the Defendants deprived him of due process in assigning him an improper medical classification. The due process clause is only implicated when a Fourteenth Amendment protected liberty interest is involved. *Berrier v. Allen*, 951 F.2d 622, 624 (4th Cir.1991). A protected liberty interest may arise from two sources: the due process clause itself and the laws of the states. *Id.* (quoting *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 868–69, 74 L.Ed.2d 675 (1983)).

■ Due process itself "extends only to punishment and conditions of confinement not contemplated by the original prison sentence." *Hewitt*, 459 U.S. at 466, 103 S.Ct. at 868. Plaintiff, an inmate, could reasonably anticipate any medical classification at his initial processing. Even though Plaintiff may have thought that he deserved a particular medical classification, Plaintiff's initial processing could have revealed medical conditions about which Plaintiff was unaware. Consequently, no protected liberty interest arises under the due process clause itself.

■ The Court also considers the Virginia Code and the Virginia Department of Corrections regulations to determine whether either create a protected liberty interest in Plaintiff's initial medical classification. A protected liberty interest arises if statutory or regulatory language creates "substantive predicates" to guide the decisions of prison officials. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 462, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989). Section 53.1–33 of the Virginia Code provides:

> Each person received by the Department [of Corrections] shall be examined by a licensed physician upon his arrival and at such times thereafter as may be deemed necessary. The work that a prisoner is required to do shall be dependent upon the report of the physician as to his physical and mental capacity.

Va.Code Ann. § 53.1–33 (Michie 1994). Section 53.1–33 requires only that the inmate receive an examination. *Id.* Section 53.1–33 also establishes that the examining physician must exercise his judgment in reporting on the prisoner's physical and mental capacity for determining a prisoner's work assignment. *Id.* Simply, nothing in this statute compels prison officials or doctors to give an

inmate a particular classification or work assignment.[2] Therefore, Plaintiff has no protected liberty interest arising out of Virginia Code section 53.1–33 in a particular medical classification.

■ In addition to state statutes, state regulations can create protected liberty interests. *Hewitt,* 459 U.S. at 466, 103 S.Ct. at 868; *see Hayes v. Thompson,* 726 F.2d 1015, 1017 (4th Cir.1984). Plaintiff's allegations pertain to two Department of Corrections Guidelines. Virginia Department of Corrections Department Operating Procedure 717 ("DOP 717") addresses Medical Screening and Classification. Paragraph F. of DOP 717 provides:

1. The inmate's assignment to classification should be *dependent upon the physician's assessment as to his/her physical and mental capacity.* The examining physician should recommend a classification status and develop and implement a treatment plan including recommendations concerning housing, job assignment, and program participation.

2. Physicians employed by the Department [of Corrections] have the authority to impose restrictions on assignments for medical reasons.

3. The Office of Health Services should collaborate with the classification unit and make recommendations as to the appropriate facility to provide the level of care indicated by the inmate's medical classification.

DOP 717 (emphasis added). The language of DOP 717 reveals that the inmate's medical classification depends on the recommendation of the examining physician, a matter solely within the judgment of a trained medical professional. In other words, no "substantive predicates" guide the examining physician's determination as to an inmate's medical status in DOP 717. *See Thompson,* 490 U.S. at 462, 109 S.Ct. at 1909.

Further, DOP 717 does not link an inmate's medical classification with "A", "B", and "C" custody classification levels. Instead, another regulation, Virginia Department of Corrections Department Operating Procedure 823 ("DOP 823") addresses Inmate Custody Classification. Paragraph B.1. of DOP 823 designates three custody classifications: Maximum (C Custody), Medium (B Custody), and Minimum (A Custody). An inmate's classification into one of those three custody levels depends upon an evaluation of the inmate under criteria listed in the regulation. DOP 823. None of the criteria, except perhaps an inmate's potential alcohol or drug abuse problems, involves a medical evaluation of the inmate's physical or mental condition. *Id.*

Paragraph B.2. of DOP 823 lists a series of override considerations, which allow local or State facility and security staff to recommend to the Central Classification Board a lower or higher custody classification score, and consequently, a lower or higher custody classification. These override considerations give the prison administrators broad discretion, and this broad discretion means that there are no substantive limitations on the decisions made by prison officials. *See Slezak v. Evatt,* 21 F.3d 590, 595 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994). Additionally, no internal cross references connect the criteria listed in DOP 823 with the inmate's medical classification under DOP 717. Consequently, no liberty interest in an inmate's medical classification arises under DOP 823[3] or under DOP 717 together with DOP 823.

*C. Conclusion*

Plaintiff Treadwell's complaint does not support a section 1983 claim based on supervisory liability against Defendants Murray, Kline, and Theckepera. Also, Plaintiff Treadwell has failed to establish a claim based on a violation of a protected liberty interest in his initial medical classification

---

2. The Court need not address whether Plaintiff has a protected liberty interest in receiving an initial examination because Plaintiff has only disputed that his initial examination resulted in an improper medical classification.

3. In addition, no protected liberty interest arises in an inmate's custody classification under DOP 823. *Mitchell v. Murray,* 856 F.Supp. 289, 294 (E.D.Va.1994).

either under the due process clause itself, Virginia Code section 53.1–33, or Virginia Department of Corrections Guidelines DOP 717 and DOP 823. As a result, Defendants' motion to dismiss for failure to state a claim upon which relief can be granted is GRANTED.

## II. *Defendant Unknown Physician*

██ Defendant unknown physician has never been identified, and the Court has not received a waiver of service from him. Until a defendant answers or until the Court directs the United States Marshall to effect personal service, the Court cannot be certain that a defendant has received the complaint. In this case, the Court does not yet have personal jurisdiction over the unknown physician.

Even though the identity of the unknown physician has never been determined, the Court has already determined that Plaintiff has no due process right in receiving a particular medical classification. Because an attempt to obtain personal jurisdiction over the unknown physician would serve no purpose, the Defendant unknown physician is **DISMISSED** as a party from this action.

Plaintiff is **ADVISED** that he may appeal from this Memorandum Opinion and Dismissal Order by forwarding a written notice of appeal and an application to proceed *in forma pauperis* to the Clerk of the United States District Court, United States Courthouse, Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within thirty (30) days of the date of this order.

The Clerk is **DIRECTED** to send a copy of this order to Plaintiff and counsel for Defendants.

IT IS SO **ORDERED**.