64 F.3d 659
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Theodore R. REIFF, M.D., Plaintiff-Appellant,
v.
Timothy J. SULLIVAN, individually, and in his official
capacity as President of the College of William and Mary in
Virginia; Dennis L. Taylor, individually, and in his
official capacity as Dean and Director of the Virginia
Institute of Marine Science, Defendants-Appellees.
 No. 94-2557.
 United States Court of Appeals, Fourth Circuit.
 Argued July 11, 1995.
Decided Aug. 28, 1995.
 
 ARGUED: Samuel Aaron Abady, RUBIN, KALNICK, BAILIN, ORTOLI & ABADY, P.C., New York City, for Appellant. Richard Croswell Kast, Assistant Attorney General, Richmond, VA, for Appellees. ON BRIEF: Henry L. Saurborn, Jr., RUBIN, KALNICK, BAILIN, ORTOLI & ABADY, P.C., New York City, for Appellant. James S. Gilmore, III, Attorney General of VA, Paul J. Forth, Senior Assistant Attorney General, Richmond, VA, for appellees.
 Before WILKINS and LUTTIG, Circuit Judges, and JOSEPH F. ANDERSON, JR., United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant, Theodore R. Reiff, was a non-tenured faculty member appointed for a three-year term to the Associate Faculty of the School of Marine Science ("SMS"), a graduate school within the Virginia Institute of Marine Sciences ("VIMS") at the College of William and Mary. Reiff filed a 42 U.S.C. Sec. 1983 claim against Dennis L. Taylor, individually and in his capacity as the Dean of SMS and the Director of VIMS, for allegedly dismissing Reiff from the faculty of SMS and ousting him from his VIMS laboratory in retaliation for speaking out against changes in the tenure policy of SMS. See Pickering v. Board of Educ., 391 U.S. 563 (1968). Reiff also filed claims against Timothy J. Sullivan, individually and in his capacity as the President of the College of William and Mary, alleging that Sullivan "ratified" Taylor's actions. A magistrate judge sitting as a district judge pursuant to 28 U.S.C. Sec. 636(c) granted Sullivan's motion for summary judgment. The district court entered summary judgment for Taylor. Finding no reversible error, we now affirm.
 
 I.
 
 2
 Since 1989, Reiff has been occupying laboratory space at VIMS. In January, 1992, Reiff received a letter offering a three-year "courtesy appointment" to the Associate Faculty of SMS. This "courtesy appointment" entailed no tangible benefits such as a salary or health insurance.
 
 
 3
 As a result of a restructuring of the faculty at SMS in 1993, all tenured professors at SMS were required periodically to "reapply" for their faculty positions at SMS. Beginning in late June, 1993, Reiff, who was not affected by this decision,* wrote letters to both Taylor and Sullivan stating that the new policy violated both the meaning of tenure and the policies of the American Association of University Professors ("AAUP"). In a series of responses by both Taylor's and Sullivan's offices, Reiff was informed that periodic review on the basis of performance and reappointment to the faculty of SMS had no impact on a teacher's tenure, which is granted by the College of William and Mary.
 
 
 4
 At a meeting of the faculty held on August 20, 1993, Reiff raised the issue of reappointments for discussion by the faculty. At this meeting, Taylor stated that those individuals who contact persons or agencies outside VIMS to protect their rights "do so at their risk and peril." J.A. at 355. While some faculty members interpreted this as merely stressing that internal procedures should first be exhausted before seeking outside redress, Reiff, in a letter to Taylor written that same day, indicated that he and some other faculty members perceived the statement as a threat. On September 1, 1993, Reiff contacted the AAUP concerning this matter.
 
 
 5
 On May 25, 1993, the Academic Council of SMS ratified a Proposal for Associate Status in the School of Marine Science, changing the criteria and procedures for appointment as an Associate Faculty member and abolishing the position of Associate Faculty for courtesy appointments. On October 13, 1993, also pursuant to the restructuring of the faculty at SMS, the Academic Council of SMS passed Procedures and Criteria for Adjunct Faculty Appointment in the School of Marine Science. Pursuant to this resolution, Reiff, along with 31 other persons who shared Reiff's faculty status, was removed from his position on the Associate Faculty on October 13, 1993, and informed that he could apply for the position of Adjunct Faculty--a category that replaced the old Associate Faculty as it pertains to courtesy appointments. On or about October 14, 1993, a letter was sent to all 32 courtesy appointments, including Reiff, informing each of the change. As a result of Reiff's protests that this termination violated his right to serve his full three-year term, Reiff was reinstated to the faculty for the full term of his appointment by appellee Taylor on December 16, 1993.
 
 
 6
 Throughout this time period, Reiff continued to occupy laboratory space at VIMS. In a letter of November 22, 1993, Reiff was informed that as a result of concerns expressed by the full-time faculty about the lack of adequate working space he could no longer have the laboratory space at SMS/VIMS. Upon requests from Reiff himself, Reiff was permitted to remain in the laboratory until he could make other arrangements for his experiment and equipment. A letter dated May 24, 1994, written by an Assistant Attorney General of Virginia to Reiff's lawyers, stated that Reiff had "not been ousted from the lab space that he has occupied at [VIMS]." J.A. at 412. At oral argument before this court, Reiff acknowledged that he had not removed his equipment from the laboratory until December 28, 1994.
 
 
 7
 Reiff now alleges that he was terminated from the faculty and expelled from the laboratory because of the views he expressed at the August 20 meeting and for contacting the AAUP. Reiff also alleges that appellee Sullivan "ratified" this conduct and should be liable as Taylor's supervisor.
 
 II.
 
 8
 We review a grant of summary judgment de novo, employing the same standards used by the district court. See Swanson v. Faulkner, 55 F.3d 956, 964 (4th Cir.1995). Summary judgment is appropriate where there is no "genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). All reasonable inferences must be made in favor of the non-moving party, viewing the evidence in the light most favorable to that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).
 
 
 9
 In order to establish a valid Sec. 1983 claim that expressions provoked retaliatory action, Reiff must show three things: (1) that the statements he made were constitutionally protected; (2) that he was deprived of some valuable benefit as a result of the retaliatory action; and (3) that "but for" the expressions, Taylor and Sullivan would not have taken the actions they did. Huang v. Board of Governors, 902 F.2d 1134, 1140 (4th Cir.1990); see also DiMeglio v. Haines, 45 F.3d 790, 804 (4th Cir.1995).
 
 A.
 
 10
 Determining whether a government employee's speech was protected at the time it was uttered "entail[s] striking ' "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public service it performs through its employees." ' " DiMeglio, 45 F.3d at 805 (quoting Connick v. Myers, 461 U.S. 138, 142 (1983) (quoting Pickering, 391 U.S. at 568)). While we have doubts as to whether Reiff's actions were even protected by the First Amendment, we need not reach this question because, as we explain below, Reiff has failed to proffer facts sufficient to support a finding that he has been deprived of a valuable benefit or that "but for" the expression, Taylor and Sullivan would not have acted as they did.
 
 B.
 
 11
 As to whether Reiff has been deprived of a valuable government benefit, although Reiff's status on the faculty of SMS has nominally changed, as SMS eliminated courtesy appointments to the Associate Faculty and changed them to the Adjunct Faculty, Reiff has provided no evidence of any differences between the two positions, save the name. Except for the name change to accommodate SMS's restructuring--which is wholly attributable to the Academic Council of SMS--Reiff's status on the faculty remained unchanged throughout the full-term of his courtesy appointment. Reiff's claim that the temporary loss of appointment caused "substantial harm to reputation and embarrassment," Appellant's Reply Br. at 17, is frivolous in light of the fact that he retained his position on the faculty for the full-term of his appointment and that no public announcement was made of the temporary loss of position which was immediately corrected upon Reiff's protestations. Reiff has provided no evidence of any financial or other loss suffered by him.
 
 
 12
 Moreover, even were we to find that the facts could support a finding of temporary injury, any such injury does not rise to the level of a deprivation of a valuable government benefit in violation of the Constitution. See DiMeglio, 45 F.3d at 806 ("Not every restriction is sufficient to chill the exercise of First Amendment Rights...."). As the Supreme Court stated in Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 285-86 (1977), "[t]he constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct." Here, Reiff was promptly reinstated for the full term of his original appointment.
 
 
 13
 Similarly, the uncontroverted evidence indicates that Reiff was never ousted from his laboratory. While it is true that Reiff was initially asked to vacate his laboratory on November 23, 1993, due to space constraints at SMS and VIMS, Taylor and other officials at SMS and VIMS granted requests from Reiff that he be allowed to maintain use of the laboratory until he could make other arrangements. In a letter of May 24, 1994, Reiff was informed that he could maintain use of the laboratory at VIMS. Not until December 28, 1994, seven months after Reiff was expressly and clearly informed that he did not have to vacate the laboratory, and well after the district court's disposition of this case, did Reiff remove his equipment from the laboratory. Reiff's decision to leave the laboratory was his own, and the facts cannot support a finding that he was expelled from the laboratory.
 
 C.
 
 14
 Apart from the fact that Reiff has failed to demonstrate that he was deprived of some valuable benefit in retaliation for constitutionally protected conduct, Reiff has failed to provide evidence which could support a finding that there is a causal link between Reiff's expressions and the actions taken by the appellees.
 
 
 15
 The minutes from the meeting of the Academic Council of SMS reflect that plans for the reorganization of the SMS faculty had been adopted on May 25, 1993. The faculty and administration of SMS/VIMS had been working on developing new organizational bylaws since 1989. The record is uncontroverted that the Academic Council abolished the title of Associate Faculty as it pertains to courtesy appointments almost three months prior to Taylor's alleged threats and to the conduct of Reiff which forms the basis for Reiff's claims. It is obvious that an action taken on May 25, 1993, could not be in retaliation for statements which Reiff later made on August 20, 1993. Moreover, the abolishment of the Associate Faculty position for courtesy appointments affected all thirty-two individuals with this status. The letter Reiff received informing him that he was no longer on the faculty was sent to thirty-one other persons with the same status as Reiff.
 
 
 16
 As this court explained in Huang: "The causation requirement is rigorous; it is not enough that the protected expression played a role or was a motivating factor in the retaliation; claimant must show that 'but for' the protected expression the employer would not have taken the alleged retaliatory action." Huang, 902 F.2d at 1140. In this case, Reiff has not even provided facts which support the contention that his conduct "played a role" in appellees' actions, much less that his conduct was the "but for" cause of the supposed retaliatory action.
 
 
 17
 Similarly, the facts cannot support the determination that Reiff's protests to the change in the tenure policy caused him to be ousted from the laboratory. The record clearly indicates that courtesy appointments are not normally allocated laboratory space. Further, Reiff had occupied the laboratory at VIMS since 1989, almost three years prior to his courtesy appointment in 1992. The record also clearly indicates that laboratory space was very limited and that Taylor explained to Reiff that the first priority was to find laboratory space for full-time faculty. On August 21, 1992, an institutional committee assigned with the task of reviewing office and laboratory space allocations held a meeting to examine the use of laboratories at VIMS. The committee concluded, a year prior to Reiff's complaint of retaliation, that Reiff's laboratory was underutilized and that due to a shortage of space the laboratory should be devoted to full-time faculty. Reiff's contentions in September, 1994, that the laboratory space he occupied went unused after he stopped using it, see J.A. at 328-39, does not in any way contradict the committee's determination that there was a lack of space at SMS/VIMS. The laboratory went unused because until December 28, 1994, Reiff himself occupied the laboratory. In short, the facts cannot support the conclusion that "but for" Reiff's complaints about the tenure policy, the appellees would not have acted as they did.
 
 
 18
 The judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 *
 Reiff does not claim that he could or did acquire tenure at SMS, VIMS or the College of William and Mary