**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

THOMAS LEE MCLAMB,
Plaintiff-Appellant,

v.

WILLIAM DUGGER, Captain; P. I.

TARRANGI, Warden; MAJOR TURNER;
E. B. WRIGHT, Warden; D. R.
LAWSON, Warden; J. A. SMITH,
Administrator,
Defendants-Appellees.

No. 94-7463

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Henry C. Morgan, Jr., District Judge.
(CA-94-1155-2)

Argued: December 6, 1995

Decided: February 28, 1996

Before MURNAGHAN and LUTTIG, Circuit Judges, and
CHAPMAN, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Elizabeth R. Baker, Student Counsel, Appellate Litigation
Clinical Program, GEORGETOWN UNIVERSITY LAW CENTER,
Washington, D.C., for Appellant. Martha Murphey Parrish, Special

Assistant Attorney General, OFFICE OF THE ATTORNEY GEN-
ERAL, Richmond, Virginia, for Appellees. **ON BRIEF:** Steven H.
Goldblatt, Ellen R. Finn, Supervising Attorney, Appellate Litigation
Clinical Program, GEORGETOWN UNIVERSITY LAW CENTER,
Washington, D.C., for Appellant. James S. Gilmore, III, Attorney
General, OFFICE OF THE ATTORNEY GENERAL, Richmond,
Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Thomas McLamb appeals the district court's dismissal of his com-
plaint alleging a violation of his constitutional due process rights as
enforced by 42 U.S.C. § 1983. We affirm based on the standard set
forth by the Supreme Court in Sandin v. Conner, ___ U.S. ___, 115
S. Ct. 2293 (1995), for due process claims brought by prisoners.

I.

While McLamb was a prisoner at the Greensville Correctional
Center ("the Center"), he was charged with committing assault upon
a staff member. On March 26, 1994, pending his hearing, the Center
placed McLamb on pre-hearing detention status. Twenty-six days
later, on April 21, 1994, the Center changed McLamb's status from
pre-hearing detention to general detention status. The Department of
Corrections ("DOC") regulations provide, however, that a prisoner
shall spend no more than 15 days in pre-hearing detention. See, e.g.,
DOC Division Operating Procedure 822-7.6 ¶ 3 (April 16, 1992);
Division Operating Procedure 861-7.8 ¶ 7 (April 1, 1992); and Divi-
sion Operating Procedure 822.7.1 ¶ 3 (April 16, 1992).

McLamb received an Institutional Classification Committee ("ICC") hearing on April 26, 1994. The ICC determined that continued segregation on general detention status was appropriate because of McLamb's history of disruptive and assaultive behavior toward staff. McLamb remained on general detention status until August 30, 1994.**1**

Acting pro se, McLamb filed a lawsuit in federal district court alleging a violation of his constitutional rights as enforced by 42 U.S.C. § 1983. He alleged that he was deprived of a protected liberty interest in violation of his due process rights. Although his complaint is not precise, his allegation was based on two basic facts: (1) that the Center kept him in pre-hearing detention beyond the 15-day period allotted for such detention in the Virginia DOC's regulations and (2) that the Center kept him segregated from the general population on general detention status until August 30, 1994. McLamb also filed a petition of poverty, seeking leave to proceed in forma pauperis under 28 U.S.C. § 1915.

The district judge granted McLamb's petition to proceed in forma pauperis, but dismissed his complaint as legally frivolous under 28 U.S.C. § 1915(d). The district court based its decision on pre-Sandin case law which allowed the court to find a liberty interest in cases where state regulations placed a substantive limit on official discretion. Finding no liberty interest in the DOC regulations addressing segregation, the district court reasoned that the claim should be dismissed. The district court, however, failed to cite specifically or discuss the regulations regarding the limits on pre-hearing detention. McLamb appealed contending that he had a liberty interest in spending no more than 15 days in pre-hearing detention. **2**

_____

**1** The hearing on the assault charge was repeatedly continued until the charge was dismissed without a hearing on May 16, 1994.

**2** It is a well-settled principle of law that McLamb had no liberty interest in the days he spent on general detention status. Mitchell v. Murray, 856 F. Supp. 289, 293 (E.D. Va. 1994), appeal denied, 66 F.3d 316 (4th Cir. 1995) (table).

McLamb also filed a motion to defer briefing pending the United States Supreme Court's decision in Sandin v. Conner, which raised issues relevant to his due process claim. We granted that motion.

II.

Section 1915(d) allows the dismissal of an in forma pauperis lawsuit if the court is "satisfied that the action is frivolous." 28 U.S.C. § 1915(d). A case is frivolous if the plaintiff would not be entitled to relief under any arguable construction of the law or facts. Neitzke v. Williams, 490 U.S. 319, 325 (1989). We review the district court's dismissal under 28 U.S.C. § 1915(d) for abuse of discretion. Denton v. Hernandez, 504 U.S. 25, 33 (1992).

In order to make a due process claim, a prisoner must first allege and prove a liberty interest protected by the Constitution or the laws of the states. Prior to the Supreme Court's decision in Sandin, a state regulation which "plac[ed] substantive limitations on official discretion" was sufficient to create a liberty interest protected by due process. Olim v. Wakinekona, 461 U.S. 238, 249 (1983). As a result, a court's inquiry when examining prisoners' due process claims for segregated confinement, such as McLamb's claim, often focused exclusively on the language of a state's regulation. Sandin, ___ U.S. at ___, 115 S.Ct. at 2299; Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 461 (1989).

In Sandin, the Court criticized the excessive attention paid to the language of regulations, finding that it produced undesirable effects: (1) by creating "disincentives for States to codify prison management procedures in the interest of uniform treatment" and (2) by leading "to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone." Sandin, ___ U.S. at ___, 115 S.Ct. at 2299-2300. Thus, the Court announced a new standard for finding state-created liberty interests protected by the Due Process Clause. Under Sandin, a plaintiff must prove "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" in order to demonstrate a due process violation. Id. at ___, 115 S. Ct. at 2300. Sandin applies retroactively to McLamb's appeal. Reynoldsville Casket Co. v. Hyde, ___

4

U.S. \_\_\_, \_\_\_, 115 S. Ct. 1745, 1748 (1995); Harper v. Virginia Dep't of Taxation, \_\_\_ U.S. \_\_\_, #6D 6D6D#, 113 S. Ct. 2510, 2517 (1993).**3**

McLamb argues that we should remand, in order to give him a chance to prove a violation of his due process rights under the new Sandin standard. Where further record development is necessary to make a Sandin determination, a remand is proper. Gotcher v. Wood, 66 F.3d 1097, 1101 (9th Cir. 1995) (remanding because record was not sufficient to determine if there was a liberty interest under Sandin standard). On the other hand, if the record is sufficiently developed for this court to apply the Sandin standard, then remand is not appropriate. Cf., White v. Gregory, 1 F.3d 267 (4th Cir. 1993) (upholding dismissal of prisoner's Eighth Amendment claim where no further facts necessary to affirm under a new standard), cert. denied, 114 S. Ct. 931 (1994).

Thus, we turn to the question of whether further record development is necessary. In Sandin, the Court found that disciplinary segregation did not constitute atypical and significant hardship where:

> (1) the disciplinary segregation mirrored conditions of other forms of completely discretionary confinement;

> (2) based on a comparison between inmates inside and outside disciplinary segregation, the state's action in placing the defendant in segregation did not significantly disrupt the defendant's environment; and

> (3) the state action did not affect the duration of the defendant's sentence.

_____

**3** When the Supreme Court hands down a decision in a civil case and applies a new legal rule to the parties in the case before it, then the new rule applies retroactively to all pending cases. Reynoldsville Casket, 115 S.Ct. at 1748; Harper, 113 S.Ct. at 2517 (1993). The Supreme Court applied the rule announced in Sandin to the parties before it, thus we must apply Sandin here because McLamb's appeal was pending at the time the Court handed down its decision.

5

___ U.S. at ___, 115 S.Ct. at 2301-02.

In order to establish that the 11 extra days he spent in pre-hearing detention denied him a liberty interest, McLamb would have to allege and prove that one of the three Sandin factors applied to his detention. McLamb concedes that the record demonstrates that his segregation did not significantly disrupt his environment, nor was his environment significantly different from the conditions in custodial management, which is entirely discretionary. McLamb argues that record development is needed as to the third factor--whether the excess time he spent on pre-hearing detention affected the ultimate duration of his sentence. At oral argument upon questioning by the court, however, McLamb could point to nothing he could develop about the extra 11 days he spent on pre-hearing detention, if allowed discovery, which could affect the ultimate duration of his sentence. We, therefore, conclude that further development of the record is unnecessary and that McLamb cannot establish a due process violation under Sandin; the decision below is therefore

AFFIRMED.

6