Eileen McAFEE, Plaintiff,

v.

Selina DEALE, Defendant.

No. Civ. A. 3:98cv295.

United States District Court,
E.D. Virginia,
Richmond Division.

Sept. 29, 1998.

---

Gerald Thomas Zerkin, Gerald T. Zerkin & Associates, Richmond, VA, Melanie Alicia Hopper, Gerald T. Zerkin & Associates, Richmond, VA, Barbara Jeanne Hughes, Gerald T. Zerkin & Associates, Richmond, VA, for Eileen McAfee, Plaintiff.

Keith Allen May, Office of the City Attorney, Richmond, VA, Gregory Augustine Lukanuski, Office of the City Attorney, Richmond, VA, for Selina Deale, Defendant.

### MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This is a 42 U.S.C. § 1983 matter currently before the Court on defendant's motion to dismiss or, in the alternative, motion for summary judgment.[1] Because both parties have submitted matters outside the pleadings in support of their arguments, the Court will

---

1. Several other motions are also pending. The Court's accompanying order resolves all other pending motions. Plaintiff's motion to amend her complaint is granted. The Court elects to decide the pending motion for summary judgement on the record as made. Accordingly, the parties' various pending motions to strike evidence and pleadings are all denied.

treat defendant's pending motion as one for summary judgment, as permitted by Federal Rule of Civil Procedure 12(c).

The defendant maintains that she is entitled to summary judgment because the injuries allegedly suffered by plaintiff are not constitutionally cognizable and that, even if they were, the defendant is entitled to a defense of qualified immunity. For the reasons set forth below, the Court disagrees with both contentions and denies defendant's motion.[2]

## I. Factual Background

The basic facts of this case are undisputed. Plaintiff Eileen McAfee ("McAfee") is a member of Save our Shelters ("SOS"). SOS is a non-profit animal-rights group dedicated to improving conditions at the local animal Shelter (the "Shelter") by monitoring its operation. Plaintiff has been involved in animal-rights activities for several years. She considers such activities central to her political beliefs.

Defendant Selina Deale ("Deale") is the Superintendent of Animal Control for the City of Richmond ("City"). Deale supervises the Shelter. News articles in at least two local newspapers identified SOS and its members as harsh critics of the Shelter. Plaintiff McAfee has been particularly vocal in expressing her dissatisfaction with Shelter conditions. In addition to registering her complaint with City officials and the media, McAfee has complained about conditions at the Shelter to state officials. McAfee contends that defendant Deale responded to this criticism by falsely accusing McAfee in correspondence and statements to the press of fraud, dishonesty, and racism.

Based on these allegations, McAfee filed a lawsuit for libel in state court against the City and defendant Deale on February 26, 1998. City policy ostensibly affords SOS members the same opportunity to visit the animal Shelter and transfer[3] animals from the Shelter as is afforded other members of the public. However, plaintiff McAfee alleges that the day the lawsuit was served, the defendant subjected SOS to unique and substantial restrictions on SOS' ability to transfer animals from the Shelter. In addition, on March 10, 1998, days after defendant Deale was served with the libel suit, a subordinate of the defendant denied McAfee and another SOS volunteer entry to the Shelter. Plaintiff further alleges that a Shelter security guard informed her on March 10, 1998 that she wasn't "allowed on the property anymore" and that defendant Deale called the Richmond police to enforce the expulsion.

Upon written request by plaintiff's counsel, the City Attorney's office assured McAfee on March 23, 1998 that she enjoyed access to the Shelter on the same terms as the general public. McAfee then returned to the Shelter without incident on at least two occasions in the next few weeks during which defendant Deale was absent. However, on April 14, 1998 when Deale was present, plaintiff, her husband, and another SOS member were touring the Shelter when a Shelter security guard again demanded plaintiff leave the premises. Deale acknowledges calling City police officers to enforce the expulsion on this occasion.

On April 14, 1998, plaintiff's counsel again wrote the City Attorney's office concerning the expulsions. The City Attorney's only response was to disavow responsibility for the "day-to-day" operations of the facility and refer plaintiff to the defendant for resolution of the dispute. On the same date, plaintiff's husband sent a facsimile letter to the Acting City Manager concerning the expulsion. The facsimile demanded "notification that I'm free to visit the Shelter at anytime in the future." Although the Acting City Manager provided a copy of this facsimile to the defendant. Deale never notified plaintiff or her husband that they were free to return. Indeed, at the suggestion of de-

---

**2.** The Court's accompanying order grants plaintiff leave to file an amended complaint. The amended complaint drops the action against the defendant in her official capacity and drops the equal protection claim. Thus, defendant's arguments concerning these matters are moot and need not be addressed in this opinion.

**3.** "Transfer privileges" allow groups like SOS to obtain animals from the Shelter in order to facilitate their adoption by others without having to formally adopt the animals themselves.

fendant's supervisor, the Acting City Manager did not respond to the facsimile at all.

There is an extensive history of antagonistic encounters between SOS and the Shelter staff. However, defendant has proffered no specific reason for the March 10, 1998 and April 14, 1998 expulsions of plaintiff. Instead, she vaguely maintains that plaintiff was expelled from the Shelter because McAfee was "interfering with City business." Deale acknowledges that she did not personally witness any misconduct by plaintiff on either occasion. She is additionally unable to name the subordinate who allegedly reported plaintiff's misconduct on April 14, 1998.

McAfee alleges that she believed her expulsion from the Shelter was indefinite. Defendant alleges that the expulsions were temporary only and that plaintiff was free to return to the Shelter at any time. Defendant acknowledges that they did not inform plaintiff she could return to the Shelter. Plaintiff argues that the security guard's comment that she wasn't allowed on the property "anymore," that defendant's failure to explicitly provide a date or circumstances upon which plaintiff could return to the Shelter, and defendant's failure to respond to the facsimile in which her husband demanded assurances that he could return to the Shelter all justified her belief that her expulsion was indefinite.

## II. Legal Analysis

■ Plaintiff filed this 42 U.S.C. § 1983 action alleging that Deale's actions were in retaliation for the exercise of her First Amendment rights of speech and association. Retaliation by a public official for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983. *See generally Mt. Healthy City School Dist. Bd. of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Defendant argues, however, that she is entitled to summary judgment because plaintiff's alleged injuries are not constitutional in nature and because she

is entitled to qualified immunity from this suit. The Court considers each argument in turn.

### A. Constitutional Injury

■ The Fourth Circuit instructs district courts, as a threshold issue, to determine whether Section 1983 plaintiffs properly allege a constitutional injury. *ACLU v. Wicomico County*, 999 F.2d 780 (4th Cir.1993) (citing *Siegert v. Gilley* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) and *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990)). In the context of a First Amendment retaliation claim, this requirement dictates that a plaintiff demonstrate the retaliation caused some "adversity[,]" *see Wicomico County*, 999 F.2d at 785, or that the retaliation deprived her of some "valuable benefit." *See Huang v. Bd. of Governors of University of North Carolina*, 902 F.2d 1134, 1140 (4th Cir.1990).[4] This matter is to be determined as a question of law. *Burgess v. Moore*, 39 F.3d 216 (8th Cir.1994).

Fourth Circuit precedent establishes that certain minimal types of injuries are not constitutionally cognizable and do not warrant redress under 42 U.S.C. § 1983. On at least two occasions, the Fourth Circuit has held that the withdrawal of special or discretionary privileges, even if retaliatory, does not constitute a constitutional injury cognizable under 42 U.S.C. § 1983. *See Wicomico County* 999 F.2d at 786 (holding withdrawal of special privileges previously afforded paralegal visiting prisons was merely a "de minimis inconvenience" and not "sufficiently adverse to support a constitutional claim"); *see also Mitchell v. Murray*, 856 F.Supp. 289 (E.D.Va.1994) (holding denial of discretionary relief to prisoner not actionable under 42 U.S.C. § 1983). In an unpublished Section 1983 case, the Fourth Circuit held that a professor who was transferred in alleged retaliation for the exercise of First Amendment rights did not state a constitutional claim because he suffered no financial loss, no loss

---

4. This requirement does not dictate that plaintiff must show that the retaliatory act independently deprives her of a constitutional right. Thus, in the instant case, plaintiff McAfee is not required to show that the defendant's retaliation curtailed her right to seek legal redress or the right to

associate with SOS. To require such a showing would eliminate the independent cause of action for retaliation. *See Wicomico County*, 999 F.2d at 780, n. 6; *see also Dixon v. Brown*, 38 F.3d 379 (8th Cir.1994).

of office space, and no public announcement detailing the transfer. *See Reiff v. Sullivan,* No. 94–2557, 1995 WL 507244, *2 (4th Cir. August 28, 1995).

Seizing on these decisions, defendant maintains that her expulsions of plaintiff from Shelter premises inflicted at most a "temporary injury" upon the plaintiff. She further argues that any injury plaintiff sustained was "de minimis," and insufficient to warrant constitutional redress. The nature of the injuries plaintiff McAfee allegedly suffered, however, differs substantially from those of the plaintiffs cited above. Plaintiff McAfee does not contest the withdrawal of special privileges, as was the case *Wicomico,* or discretionary relief, as was the case in *Mitchell.* Nor do her allegations concern an injury merely nominal in nature as was the case in *Reiff.*

Rather, McAfee alleges that she was at least twice denied access to the Shelter on the terms enjoyed by the general public and threatened with criminal prosecution. Plaintiff McAfee further alleges that the organization to which she belongs was denied the same right to transfer animals from the Shelter that other groups enjoyed. Finally, and perhaps most significantly, plaintiff McAfee argues that her exclusion from the Shelter is, at least in effect, an indefinite ban from the Shelter. This ban infringes on activities the plaintiff maintains are "critically important" and "essential" to the political beliefs she and her organization actively espouse.

■ Plaintiff alleges that the Shelter security guard informed her that she wasn't allowed on the property "anymore." Neither the defendant nor any of her agents informed plaintiff she could return to the Shelter following her expulsion on April 14, 1998 despite the explicit request of plaintiff's husband to do so. Finally, plaintiff correctly cites Virginia's law of criminal trespass to support her assertion that the ban was indefinite. Virginia Code Section 18.2–119 prohibits one from remaining or re-entering land or premises from which she has been previously

forbidden. This code section applies to both public and private land. *Johnson v. Commonwealth,* 212 Va. 579, 582, 186 S.E.2d 53 (1972). Thus, state law indefinitely and unequivocally prohibited McAfee from returning to the Shelter following the April 14, 1998 expulsion.

The Court holds that plaintiff's allegations of an indefinite ban from public property imposed in retaliation for the exercise of her First Amendment rights constitutes a constitutional injury cognizable under 42 U.S.C. § 1983. The Court now turns to defendant's contention that she is entitled to qualified immunity from liability for her alleged actions.

### B. Qualified Immunity

■ Despite the Court's determination that plaintiff suffered a constitutionally cognizable injury, the defendant argues that she may still evade liability by asserting a defense of qualified immunity to plaintiff's claims.[5] *See generally Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Qualified immunity protects individual defendants from civil liability so long as their alleged conduct does not violate clearly established constitutional rights that a reasonable person in the defendant's position would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This standard is objective; the particular knowledge or subjective intent of the specific defendant is immaterial. *Anderson,* 483 U.S. at 641, 107 S.Ct. 3034.

Thus, to determine qualified immunity, the Court must determine whether the alleged conduct was clearly prohibited and determine whether a reasonable person in the defendant's position would be aware of the prohibition. *See Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir.1992); *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir.1992); *see also Winfield v. Bass,* 106 F.3d 525, 531 (4th Cir.1997); *Bonner v. Anderson,* 81 F.3d 472, 476 (4th Cir.1996).

---

**5.** This defense, however, protects defendants from claims for compensatory damages only. Accordingly, the defense, even if upheld, would serve as no bar to plaintiff's claims for injunctive

and declaratory relief. *See Wood v. Strickland,* 420 U.S. 308, 314 n. 6, 95 S.Ct. 992, 997 n. 6, 43 L.Ed.2d 214, 221 n. 6 (1975); *Young v. Lynch,* 846 F.2d 960 (4th Cir.1988).

The defendant argues that a reasonable person in her position would not have known that her alleged conduct was unconstitutional. However, there are few constitutional rights as firmly ensconced and well-understood as those granted by the First Amendment. A long line of cases unequivocally affirms the right to be free from retaliation for the exercise of these rights. *See, e.g., Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. at 274, 97 S.Ct. 568 (holding retaliatory refusal to rehire actionable); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (holding that the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech"); *Pickering v. Bd. of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (holding retaliatory dismissal actionable); *Buise v. Hudkins,* 584 F.2d 223, 229 (7th Cir.1978), *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979) (noting that "it is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper"); *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310 (9th Cir.1989) (holding retaliatory revocation of license actionable); *Harrison v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422 (8th Cir.1986) (holding retaliatory condemnation of property to be actionable); *Cate v. Oldham,* 707 F.2d 1176 (11th Cir.1983) (holding retaliatory prosecution actionable).

It is therefore beyond dispute that the Constitution prohibits widely varying forms of retaliation for the exercise of First Amendment rights. While no case explicitly announces a prohibition against expelling animal-rights activists from Shelters, it is imperative to note that the defendant is a sophisticated and relatively high ranking City official. As such, she enjoyed at all relevant times, competent and accessible legal counsel. It is also imperative to note that defendant and City attorneys frequently discussed the treatment of SOS personnel at the Shelter. Even had Shelter officials not apprised City attorneys of plaintiff's April 14, 1998 expulsion from the Shelter, the SOS corre-

spondence relayed from the Acting City Manager certainly did. For these reasons, the Court holds that any reasonable person in defendant's position would have construed the well-established prohibition against retaliation to include the injuries allegedly suffered by plaintiff.

Because the constitutional right plaintiff asserts was clearly established at the time of the defendant's alleged conduct, and because any reasonable person in defendant's position would have known that her alleged conduct violated those well-established rights, defendant Deale may not avail herself of the defense of qualified immunity.

### *III. Conclusion*

Because plaintiff alleges injuries that are constitutionally cognizable and because defendant may not avail herself of the defense of qualified immunity, the Court denies defendant's motion for summary judgment.

Let the Clerk send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.