**Ernest Calvin PACE, Plaintiff–Appellant,**

v.

**Joseph A. OLIVER et al.,
Defendants–Appellees.**

No. 79–2755.

United States Court of Appeals,
Fifth Circuit.
Unit B

Jan. 16, 1981.

Paul D. Clote, Houston, Tex. (Court–appointed), for plaintiff–appellant.

Lynda F. Knight, Elizabeth Ann Evans, Asst. Attys. Gen., Montgomery, Ala., for defendants–appellees.

Before GODBOLD, TJOFLAT and VANCE, Circuit Judges.

GODBOLD, Circuit Judge:

Plaintiff, an Alabama state prisoner, brought this suit under 42 U.S.C. § 1983, seeking injunctive relief and damages against prison officials for a long list of alleged violations of his constitutional rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. The defendants are Warden Oliver, Captain of the Guards Chancery, and the Alabama Board of Corrections.

The issues before us on appeal arose from a disturbance that occurred during November 1977 in the segregation unit of Holman State Prison during which considerable damage was inflicted to state property. After inmates began flooding the unit, prison officials entered the unit and turned the water off. Many inmates then tore loose commodes and sinks in their cells, and some of these fixtures were broken and the pieces thrown in the hallway. A few hours later Pace and other inmates were taken in a group before Warden Oliver, who talked with them.

On November 28 Pace was served with written notice of a disciplinary hearing set for November 29 on a charge of destroying state property by breaking the commode in his cell. At this hearing Pace did not dispute that the commode in his cell was broken during the disturbance, but he gave as his explanation that the commode was already cracked and was accidentally broken when he stood on it to watch prison officials turning off the water. Thus whether the commode was already cracked was a central issue in the hearing.

The board found Pace guilty and recommended that he lose all privileges for 30 days, have a bucket for a toilet for 30 days, lose six months good time, and serve a minimum of six months in segregation or until a segregation review board determined his release. The warden concurred in the disciplinary board's finding and recommendation.

Later Pace brought this suit. Giving a liberal construction to his § 1983 petition,[1] he raised these issues:

(1) Warden Oliver imposed punishment on him without due process.

(2) Chancery, chairman of the disciplinary board, improperly convened the board because he knew that the warden already had punished Pace for the offense charged.

(3) At the disciplinary board hearing Chancery arbitrarily denied Pace's requests for maintenance records and photographs relating to the commode Pace was charged with having broken.

(4) Pace was subjected to unconstitutional conditions of confinement in segregation cells–relating to lighting, hot and cold water, toilet facilities, restraints on exercise of religion, mail, access to law books, and access to psychiatrists.

(5) There was disparity of administrative punishment between prisoners in segregation and prisoners in the general population

---

1. Which incorporates by reference an earlier petition for a TRO and an injunction.

found to have committed the same offense (destruction of property).

Defendant denied all allegations.

■ On issue (1), alleged imposition of punishment by the warden, the district court found, on conflicting evidence,[2] that the warden did not impose punishment on Pace without notice when the warden met with the group of prisoners some hours after the disturbance. The district court's conclusion is not plainly erroneous. This disposes of issue (2) as well.

The trial court found for defendants on issues (4) and (5), and these findings are not questioned on appeal.

Issue (3) is the major matter before us. At trial in the district court Pace contended that at the disciplinary hearing he had requested that documentary evidence be produced: prison maintenance records, because they would show that his commode was previously cracked, and photographs of his cell, taken after the disturbance, because they would show that the pieces of his commode were in his cell after the disturbance ended and therefore had not been thrown into the hallway. Neither records nor photographs were produced. According to the trial testimony, Pace's two inmate witnesses testified before the board in support of his version that the commode was already cracked and that it broke when he stood on it.

■ The witnesses at trial did not agree on whether at the hearing Pace requested that the photographs be produced. Also, it is unclear whether the photographs were in the possession of prison officials or subject to their control. The court found that Pace made no request for the photographs when he was served with the notice; also it made

another finding that Pace made no request in writing that the pictures be produced at the hearing. If Pace requested the photographs it was for only the purpose of showing that he had not thrown into the hallway the broken pieces of his commode. This was tangential, if relevant at all. Pace was not charged with disorderly conduct or with throwing the pieces into the hallway but with breaking the commode. He concedes that he broke it, and the issue was whether accidentally or intentionally. The photographs, even if available, were of such doubtful relevance that Pace suffered no injury from their non–production.

This leaves the matter of the prison maintenance records. Under the Handbook of Rules and Information for Inmates of the Alabama Board of Corrections, the charge against Pace, destruction of state property, is a major infraction punishable by deprivation of not less than four months good time. Chancery testified in district court that at the hearing Pace did request institutional records and that they were not produced. He also testified that a prisoner is not entitled to have institutional records produced for his defense at a disciplinary hearing, and that the evidence at a disciplinary hearing consists of the charge and the oral testimony of the witnesses. Thus it appears that there is a rule or policy against accepting any document into evidence, and, inferentially, that this policy is the basis for the rule that a prisoner is not entitled to have institutional records produced.[3]

■ Under *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the court considered the rights of prisoners in disciplinary proceedings and adopted a balancing test with respect to the right to present documentary evidence:

---

**2.** An evidentiary hearing was conducted before a magistrate who made recommended findings of fact and conclusions of law. Though the record is confusing, the parties treat all of the magistrate's recommendations as having been adopted by the district judge when he entered judgment for defendants; we follow this treatment.

**3.** Our conclusions are supported by another question and a partially inaudible answer by Chancery in the district court hearing:

Q What was your response to these requests [by Pace for institutional records]?

A We don't have (inaudible) for disciplinaries. They are not allowed. I would like to point out that at a disciplinary hearing that we have the (inaudible) form, the charge and the witness.

We are also of the opinion that the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.

. . . . .

It may be that an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required.

418 U.S. at 566–67, 94 S.Ct. at 2979–2980. Thus, under *Wolff,* an absolute rule against permitting the prisoner to use documentary evidence violates procedural due process. No prison interest was given or suggested in the district court as a reason for refusing to permit use of documents in disciplinary hearings. On the record before us it is not possible to tell whether the policy is Chancery's, or a policy of Holman Prison, or of the Alabama Board of Corrections. But whoever its sponsor(s), the policy, in absolute form, as stated by Chancery, cannot stand.

We reach the same conclusion with regard to the immutable rule or policy that prison records are unavailable to the prisoner. Chancery's testimony established that there is a policy against making documentary evidence available for a prisoner's use in a disciplinary hearing and that this policy was applied to Pace.[4] No interest was suggested to justify this policy, unless it be that production is unnecessary because the policy against presentation makes the document useless; but, as we have already held, the absolute non–use policy is itself unconstitutional.

In a balancing process the scales may tip differently when the concern is whether the prisoner can have prison records produced than when the question is whether he can present in his defense documentary evidence already in his possession or control. In some instances production may reveal confidential information, or threaten institutional safety, or reveal the identity of informers. The burden of producing documents may be so heavy that the institution should not be called upon to bear it. The document may be of marginal relevance, or the demand may be no more than a fishing expedition in search of a defense. But none of these interests supports an absolute policy that in no instance will prison records be produced. Defendants' brief suggests that production would upset the record–keeping system of the prison. No such interest was brought out at trial, not even administrative inconvenience. Defendants' argument is singularly unimpressive when, in addition to the argument's having no testimonial support, the record requested is a maintenance record that may show whether and when a toilet was broken, and the record is central–indeed maybe the best evidence–of whether the prisoner committed the offense with which charged.

■ With respect to issue (5), the argument that the Constitution mandates that prisoners in segregation be given the same punishment as prisoners in the general population who have committed the same offense is patently without merit.

Pace asserts other issues on appeal. He says that there is an unconstitutional institutional policy under which the only witnesses made available to the prisoner for a disciplinary hearing are those requested in advance of the hearing (and possibly those requested when the notice of hearing is served), and, second, that this policy is applied with an uneven hand because exceptions are sometimes permitted. Pace also asserts that the hearing violated due process because Chancery was not impartial and

---

4. Neither the Handbook of Rules and Information for Inmates of the Alabama Board of Corrections nor the notice served on Pace refers to a right to the production of documentary evidence. We do not accept Pace's argument that this right is embraced in the Handbook's reference to a prisoner's right "to see all exhibits." Read in context, this refers to the right to see exhibits that are presented at the hearing, not to a right to have them produced.

made statements to board members allegedly from his personal knowledge of the facts. These contentions were not alleged by Pace, were not stated by the magistrate as issues for decision, and were not the subject of any findings. They may not be properly urged on appeal.

AFFIRMED in part and REVERSED in part.