Roger D. YOUNG, Plaintiff–Appellee,

v.

Grady B. LYNCH; Sgt. Benthall; H.R. Daughtry; Officer Newell; G.T. Cousins; John Doe, Correctional Officer, Defendants–Appellants (Two Cases).

Nos. 87–6116, 87–6139.

United States Court of Appeals,
Fourth Circuit.

Argued March 9, 1988.

Decided May 20, 1988.

Sylvia Thibaut, Asst. Atty. Gen., Lucien Capone, III, Sp. Deputy Atty. Gen. (Lacy H. Thornburg, Atty. Gen., on brief), for defendants-appellants.

Marvin Sparrow, N.C. Prisoner Legal Services for plaintiff-appellee.

Before RUSSELL and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Roger Young, an inmate at the Caledonia Correctional Institution, brought this action under 42 U.S.C. § 1983 alleging that members of the prison disciplinary committee violated his fundamental due process rights at a disciplinary hearing. The committee moved for summary judgment both on the ground of qualified immunity and on the merits. The district court denied these motions and the committee appealed the order denying qualified immunity. The district court then certified the denial of summary judgment on the merits for interlocutory review pursuant to 28 U.S.C. § 1292(b). We reverse the denial of qualified immunity, affirm the denial of summary judgment

on the merits, and remand for further proceedings.

## I

On December 12, 1983, Officer Nowell of the Caledonia Correctional Institution smelled what he thought was marijuana coming from a prison dormitory. Nowell and Officer Benthall entered the dormitory to investigate. Nowell observed inmate Young throw a cigarette onto the floor. Nowell picked up the butt, examined it, and concluded that it was marijuana. Young was searched but no contraband was found. Nowell placed the butt in an envelope marked for identification and placed it in the prison safe pending investigation.

Young was charged with a major disciplinary infraction for possession of a controlled substance. At his disciplinary hearing, Young told the disciplinary committee that the cigarette contained only Carter-Hall rolling tobacco and asked the committee to produce the butt. The committee refused and found Young guilty based on the statements of Nowell, Benthall, and Crumpler, another investigating officer who apparently did not examine the butt. Young received one to fifteen days disciplinary segregation and lost his private cell as a result.

Young then filed this suit under 42 U.S. C. § 1983 seeking compensatory and punitive damages and injunctive relief. He sought to have the infraction removed from his records and to be considered for custody promotion, housing, work assignments, and parole eligibility as if no infraction had been found. He alleged that the committee members deprived him of due process of law by failing to produce the butt as requested at the disciplinary hearing. The committee members claimed that they were entitled to qualified immunity and that they had afforded Young the minimum due process to which a prisoner is entitled.

## II

Young moved to dismiss the disciplinary committee members' appeal of the order denying them qualified immunity. He asserts that because he seeks both damages and injunctive relief, the court lacks jurisdiction to decide the issue of qualified immunity on an interlocutory appeal. He relies on *England v. Rockefeller*, 739 F.2d 140, 143 (4th Cir.1984), and *Bever v. Gilbertson*, 724 F.2d 1083, 1086–88 (4th Cir. 1984), in which we held, one judge dissenting, that a district court's denial of qualified immunity is not immediately appealable when there also exists a claim for injunctive relief that will have to be tried in any event.

After we decided *England* and *Bever*, the Supreme Court held in *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 866 Ed.2d 411 (1985), that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell*, however, did not involve a claim for injunctive relief, and the Supreme Court expressly reserved the question of the vitality of *England* and *Bever*. 472 U.S. at 519 n. 5, 105 S.Ct. at 2812 n. 5.

In *Bever*, 724 F.2d at 1086, we observed that the propriety of interlocutory appeals from denials of qualified immunity was questionable. This issue—on which the circuits had split, *see Mitchell*, 472 U.S. at 519 n. 5, 105 S.Ct. at 2812 n. 5—is now behind us. The remaining issue is whether the rationale of *Mitchell* for allowing interlocutory appeals applies when claims for damages and equitable relief are pressed. In concert with every other court of appeals that has decided the question, we believe that the rationale of *Mitchell* authorizes appeals of the denial of qualified immunity even though the complaint seeks equitable relief as well as damages. *See, e.g., Drake v. Scott*, 812 F.2d 395, 398 (8th Cir.1987); *Scott v. Lacy*, 811 F.2d 1153, 1153–54 (7th Cir.1987); *Bolden v. Alston*, 810 F.2d 353, 356 (2d Cir.1987); *Kennedy v. City of Cleveland*, 797 F.2d 297, 306 (6th Cir.1986); *De Abadia v. Izquierdo Mora*, 792 F.2d 1187, 1190 (1st Cir.1986).

In *Mitchell,* the Court noted that the denial of a claim for absolute immunity is appealable immediately because the essence of the claim is "its possessor's entitlement not to have to answer for his conduct in a civil damages action." 472 U.S. at 525, 105 S.Ct. at 2815. The Court then stated: "At the heart of the issue before us is the question whether qualified immunity shares this essential attribute of absolute immunity...." 472 U.S. at 525, 105 S.Ct. at 2815. The Court concluded that qualified immunity also provides immunity from suit which would be lost if the case goes to trial. *See* 472 U.S. at 526–27, 105 S.Ct. at 2815–16. The Court also reiterated that an interlocutory appeal must satisfy two additional criteria. The appeal must " 'conclusively determine the disputed question' ... and that question must involve a 'clai[m] of right separable from, and collateral to, rights asserted in the action.' " 472 U.S. at 527, 105 S.Ct. at 2816. The Court held that a claim of qualified immunity also satisfied these criteria.

We believe that the criteria for interlocutory appeal are satisfied even though the issue of equitable relief may remain if qualified immunity from liability for damages is granted. The interlocutory appeal to resolve the question of qualified immunity conclusively determines whether the official's conduct violated clearly established law and therefore whether the official must defend against a claim for damages. As *Mitchell* recognizes, an immunity claim is "conceptually distinct from the merits of the plaintiff's claim that his rights have been violated." 472 U.S. at 527–28, 105 S.Ct. at 2816. To this extent the claim for immunity from damages is separable from and collateral to the equitable rights that are asserted.

To be sure, an official who is granted qualified immunity from liability for damages probably will remain in the case as trial proceeds on the equitable issues. But there are considerable differences in both time and expense in defending a case that involves both damages and equitable relief as contrasted to a case that involves equitable relief alone. Resolution of the claim for damages may require a jury.

Elimination of the claim may enable the court to decide the equitable issues without a jury. Although there may be some overlap in evidence, the standards for determining compensatory and punitive damages are quite different from the standards for granting or denying equitable relief. Issues about the extent of the plaintiff's injury and entitlement to compensatory and punitive damages need not be litigated if immunity is granted. This will often relieve the official of the necessity of defending charges of wanton, reckless, or intentional harm. Frequently, the question of damages will depend on the retroactive application of a newly announced principle of law. A great deal of time and effort must be expended needlessly by the litigants on this issue, which has little relevance to the question of prospective equitable relief, if the trial court improperly denies qualified immunity and the appellate court lacks jurisdiction to decide an interlocutory appeal.

Among the factors counselling interlocutory appeal that the Court considered in *Mitchell* were " 'distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service.' " 472 U.S. at 526, 105 S.Ct. at 2815. These factors are relevant, albeit perhaps to a lesser extent, if an official cannot appeal the wrongful denial of qualified immunity because the complainant has had the foresight to request injunctive relief. Requests for correction of personnel files, expunction of records, reinstatement to a lost position, and restraint of similar conduct in the future are examples of equitable relief frequently coupled with claims for damages. Denial of an interlocutory appeal because the complaint also seeks equitable relief will thwart the purpose of *Mitchell* in many cases.

We conclude that our pre-*Mitchell* decisions in *England* and *Bever* should no longer preclude interlocutory appeal of a denial of qualified immunity. Relying on the rationale of *Mitchell* and the precedents of all other circuits that have decided the issue, we hold that we have jurisdiction to hear this appeal from the denial of quali-

fied immunity even though Young also seeks injunctive relief.

### III

Although this appeal was not heard *en banc*, all of the active judges of the court concur in part II of this opinion. *Cf. Marzullo v. State of Maryland,* 561 F.2d 540, 542–45 (4th Cir.1977).

### IV

We now address the committee members' claim that they are entitled to qualified immunity from damages for their actions. They contend that at the time of Young's disciplinary hearing, it was not clearly established that an inmate had the right to demand production of real evidence at a disciplinary hearing.

█ We are persuaded that reasonable officials in the defendants' positions would not have concluded that inmates had a clearly established right to demand production of physical evidence. First, *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), does not explicitly confer this right. Second, in *Zaczek v. Hutto,* 642 F.2d 74, 76–77 (4th Cir.1981), we held that a prison disciplinary committee, which had allowed the prisoner to cross-examine a doctor and nurse extensively, did not violate the prisoner's due process rights by denying him the production of laboratory reports at his hearing. Third, the chief legal counsel to the North Carolina Secretary of Corrections, Ben G. Irons, testified that he had previously instructed corrections personnel that North Carolina prison regulations do not require the automatic production of physical evidence in a disciplinary hearing. He advised that a finding of guilt could be substantiated without the production of physical evidence if there existed sufficient evidence of the infraction from witness statements or other evidence. The committee's evidentiary ruling in this case reflects the advice previously given them by Mr. Irons, their legal advisor.

In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Supreme Court held that government officials performing discretionary functions are not liable for damages when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." We conclude that the evidence satisfies this objective test for qualified immunity and hold the committee members are entitled to immunity from monetary damages.

### V

The officials contend that they are entitled to summary judgment on the merits because inmates have no constitutional right to demand the production of real evidence in prison disciplinary hearings. They argue that as long as there is "some evidence" to support the committee's finding of guilt, this evidence satisfies the requirements of due process as specified in *Superintendent, Massachusetts Correctional Institution v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). They also assert that although *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), allows a prisoner to call witnesses and introduce documentary evidence when institutional concerns will not be jeopardized, it is silent about the introduction of real evidence.

Young contends that notwithstanding the "some evidence" standard articulated in *Hill* and the silence of *Wolff,* an inmate still has a fundamental due process right to have real evidence produced when it is the dispositive item of proof, it is critical to the inmate's defense, it is in the custody of prison officials, and it could be produced without impairing institutional concerns.

█ The magistrate denied the defendants' motion for summary judgment, concluding that it was "not appropriate" to establish a rule that denies inmates the right to demand production of real evidence in all disciplinary cases. The district court approved the magistrate's report. We also are hesitant to establish such a constitutional rule, particularly on the limited record developed in this case. *Hill* and *Wolff,* we believe, are not controlling. Neither dealt with the question of excluding

potentially dispositive evidence that the prison authorities confiscated and hold. We therefore affirm the district court's denial of summary judgment on the merits and remand for trial. We caution, however, that neither the district court's opinion nor ours can be read to require the production of real evidence in every disciplinary hearing.

The committee members assert that even if Young prevails, they do not have the authority to grant the equitable relief he seeks. This assertion was first made on appeal and we will not address it. On remand the district court can ascertain the scope of the committee's authority. If need be, the court may join officials who can satisfy the court's grant of equitable relief, if such relief is merited.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.