FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOHN MELNIK,
　　　　　　*Plaintiff-Appellee*,

v.

JAMES DZURENDA; DWIGHT NEVEN,
Warden; JAY BARTH, Sgt.; JASON
SATTERLY, c/o; ANTHONY WARREN,
c/o; STACEY BARRETT,
　　　　　　*Defendants-Appellants*.

No. 20-15378

D.C. No.
3:16-cv-00670-
MMD-CLB

OPINION

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, Chief District Judge, Presiding

Argued and Submitted March 10, 2021
Las Vegas, Nevada

Filed September 27, 2021

Before:　Richard R. Clifton, Jacqueline H. Nguyen, and
Mark J. Bennett, Circuit Judges.

Opinion by Judge Clifton;
Dissent by Judge Bennett

## SUMMARY*

### Prisoner Civil Rights

The panel affirmed the district court's order, on summary judgment, denying qualified immunity to Nevada correctional officials in an action brought pursuant to 42 U.S.C. § 1983 by a state prisoner alleging defendants violated his constitutional rights by denying him the ability to examine certain documents that could have served as evidence in a prison disciplinary proceeding.

Plaintiff was charged with unauthorized or inappropriate use of the prison mail system after prison officials intercepted two envelopes addressed to plaintiff which contained methamphetamine in secret compartments in the enclosed letters. After plaintiff was notified of the prison charges, he asked multiple times to be able to examine the envelopes or copies of the envelopes, but those requests were denied or ignored. At the prison disciplinary hearing that followed, images of the envelopes and information about their contents were the only evidence presented to support the charges. Plaintiff testified that he was innocent and had been framed by other inmates. He was found guilty.

The panel held that defendants were not entitled to qualified immunity because Plaintiff had a constitutional right under the Due Process Clause of the Fourteenth Amendment to be permitted to examine documentary evidence for use in the prison disciplinary hearing.  The panel held that the right

---

*This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

referenced in *Wolff v. McDonnell* "to present documentary evidence in" the prisoner's own defense must generally include the ability to obtain the documentary evidence in the first place. 418 U.S. 539, 566 (1974). Similarly, if a prisoner is to be able to respond to evidence presented against him, as a general proposition he should be allowed to know what it is and to examine it, unless there is reason to the contrary. The panel further concluded that the right to examine documentary evidence for use in a prison disciplinary hearing was clearly established at the time when plaintiff was denied access to the material.

Dissenting, Judge Bennett would hold that defendants were entitled to qualified immunity because they did not violate clearly established law. Judge Bennett did not read *Wolff* as clearly establishing any right that would allow plaintiff to compel access to the prison's evidence against him. The majority suggested that *Wolff* implicitly recognized a prisoner's right to compile evidence in his defense. But Judge Bennett doubted that a passing comment on the prison's ability to limit the compilation of evidence could constitute a clearly established right. Nor could Judge Bennett locate such a right in this Circuit's case law.

---

## COUNSEL

Frank A. Toddre II (argued), Senior Deputy Attorney General; D. Randall Gilmer, Chief Deputy Attorney General; Aaron D. Ford, Attorney General; Attorney General's Office, Las Vegas, Nevada; for Defendants-Appellants.

Yaira Dubin (argued), O'Melveny & Myers LLP, New York, New York; Jonathan D. Hacker, O'Melveny & Myers LLP, Washington, D.C.; Melissa C. Cassel, O'Melveny & Myers LLP, San Francisco, California; Samuel Weiss, Rights Behind Bars, Washington, D.C.; for Plaintiff-Appellee.

**OPINION**

CLIFTON, Circuit Judge:

John Melnik, a Nevada prisoner, brought this Section 1983 action against six individuals, all former or current employees of the Nevada Department of Corrections.[1] He alleged that they violated his constitutional rights by denying him the ability to examine certain documents that could serve as evidence in a prison disciplinary proceeding pending against him. Defendants sought summary judgment on the ground that they were entitled to qualified immunity, but the district court denied that motion. Defendants appeal that denial.

We conclude that Defendants were not entitled to qualified immunity because Melnik had a constitutional right under the Due Process Clause of the Fourteenth Amendment to be permitted to examine documentary evidence for use in the prison disciplinary hearing. We further conclude that this right was clearly established at the time when Melnik was

---

[1] We treat Defendants collectively without distinguishing among them or describing their individual roles because that is the approach taken by Defendants themselves in their appeal. They have not presented any argument that one or more of the Defendants should prevail individually, even if others might not.

denied access to the material. We affirm the district court's denial of Defendants' motion for summary judgment.

## I. Background

Melnik, then a prisoner at Nevada's High Desert State Prison, was charged with unauthorized or inappropriate use of the prison mail system. An anonymous prisoner informed prison officials that Melnik was using the mail system to smuggle drugs into the prison. After this tip, prison officials intercepted two envelopes addressed to Melnik which contained methamphetamine in secret compartments in the enclosed letters. After Melnik was notified of the prison charges, he asked multiple times to be able to examine the envelopes or copies of the envelopes, but those requests were denied or ignored. At the prison disciplinary hearing that followed, images of the envelopes and information about their contents were the only evidence presented to support the charges. Melnik testified that he was innocent and had been framed by other inmates. Melnik was found guilty.

As a result of the two violations, Melnik received two separate eighteen-month terms of disciplinary segregation to be served consecutively for a total of thirty-six months. Melnik served ten months of this sentence before it was suspended. As a result of these sanctions, Melnik contends that his consideration for parole was delayed for two years.

The district court held that Defendants were not entitled to qualified immunity and denied their motion for summary judgment. *Melnik v. Dzurenda*, No. 16-00670, 2020 WL 607122, at *6–7 (D. Nev. Feb. 7, 2020). In the same order, the district court granted Melnik's cross-motion for summary judgment, concluding that Defendants violated Melnik's

Fourteenth Amendment procedural due process rights. *Id*. at *3–5. The court concluded that with liability established, the case would proceed to trial limited to the issue of damages. *Id*. at *7.

Defendants appeal the denial of their request for qualified immunity.

## II. Discussion

Denial of qualified immunity is reviewed de novo. *George v. Edholm*, 752 F.3d 1206, 1214 (9th Cir. 2014).

Generally, an order denying summary judgment is not appealable under 28 U.S.C. § 1291 as the parties must wait for final judgment to appeal. *See Johnson v. Jones*, 515 U.S. 304, 309 (1995). However, denials of qualified immunity are appealable immediately under the collateral order doctrine. *Plumhoff v. Rickard*, 572 U.S. 765, 772 (2014). This is because qualified immunity protects government employees from both liability and having to stand trial. *Id*. If the appeal of the denial of qualified immunity is not permitted until the final judgment, "the immunity from standing trial will have been irretrievably lost." *Id.* The general rule prohibiting interlocutory appeals still applies to other summary judgment decisions, including the other decision made by the district court in this case. *See Johnson*, 515 U.S. at 309. We may not entertain at this time an appeal from the part of the district court's order granting Melnik's motion for summary judgment. It is not a final judgment under Federal Rule of Civil Procedure 54(b), as the issue of damages remains to be resolved in the district court, so we do not have jurisdiction under 28 U.S.C. § 1291 or any exception thereto. *See Wilkins v. City of Oakland*, 350 F.3d 949, 952 (9th Cir. 2003). As a

result, and as the parties acknowledge, this appeal is limited to the issue of qualified immunity, about which there are no factual disputes.

Defendants are entitled to qualified immunity if (1) the alleged conduct did not violate a constitutional right or (2) that right was not clearly established at the time of the alleged violation. *See Wood v. Moss*, 572 U.S. 744, 757 (2014). We will discuss each of those two prongs separately. In doing so, we consider the specific facts of this case, as the Supreme Court has made clear that we are not to view the claim at a "high level of generality. . . . This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks and citations omitted).

## A. Constitutional Right

The first question we consider is whether Melnik had a constitutional right to access the envelopes used as evidence against him in the prison disciplinary hearing (or copies thereof) in preparing a defense. We conclude that he did.

The Supreme Court established in *Wolff v. McDonnell* that there are procedural due process rights that a prisoner must be afforded in the context of a prison disciplinary proceeding prior to being deprived of a protected liberty interest. *See* 418 U.S. 539, 555–72 (1974). In *Wolff*, a class of prisoners in Nebraska alleged, among other things, that the disciplinary proceedings they were subjected to did not comply with the Due Process Clause of the Fourteenth Amendment. *Id.* at 542–43. The procedures included oral notice of the charges, an opportunity to ask questions but not to present evidence or witnesses, and oral recitation of the

reasons for the hearing body's finding. *Id.* at 552–53, 564. The Court held that one of the constitutional rights afforded a prisoner in a disciplinary hearing is that the "inmate facing disciplinary proceedings should be allowed to . . . present documentary evidence in his defense when permitting him to do so w[ould] not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566.

If a prisoner must be allowed to present evidence in his defense, it necessarily follows that he must have some right to prepare for that presentation. With no access to the evidence that will be presented against him, a prisoner could neither build a defense nor develop arguments and evidence to contest the allegations at the disciplinary hearing. The Court noted in *Wolff* that there may be limitations on the prisoner's rights, which we will discuss further below, but in the process the Court made clear that a prisoner's right to present a defense must extend to the preparation of a defense, including compiling evidence: "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and . . . to limit access to other inmates to collect statements or *to compile* other documentary evidence." *Wolff*, 418 U.S. at 566 (emphasis added).

Many courts have held that for the right articulated in *Wolff* to mean anything, a prisoner must also have the right to access evidence that he might use in preparing or presenting his defense. *See Lennear v. Wilson*, 937 F.3d 257, 269 (4th Cir. 2019) ("[A]n inmate's due process rights related to . . . evidence has at least two dimensions: (A) the qualified right of access to such evidence and (B) the qualified right to compel official review of such evidence."); *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 813–14 (10th Cir. 2007); *Young v. Kann*, 926 F.2d 1396, 1400–02 (3rd Cir. 1991);

*Smith v. Mass. Dep't of Corr.*, 936 F.2d 1390, 1401 (1st Cir. 1991); *Meis v. Gunter*, 906 F.2d 364, 367 (8th Cir. 1990); *cf. Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir. 1989) ("[A] prisoner is entitled to be . . . informed of the evidence against him . . . ." (quoting *Nieves v. Oswald*, 477 F.2d 1109, 1113 (2d Cir. 1973)); *Pace v. Oliver*, 634 F.2d 302, 305 (5th Cir. Unit B Jan. 1981) (holding that "an absolute policy that in no instance will prison records be produced" to a prisoner for use in a disciplinary hearing violates procedural due process); *Chavis v. Rowe*, 643 F.2d 1281, 1286 (7th Cir. 1981) (requiring disclosure of exculpatory evidence to insure "the right of the [inmate] to prepare the best defense he can and bring to the [disciplinary committee's] attention any evidence helpful to his case").

The First Circuit accurately observed that "if an inmate has a circumscribed right to present documentary evidence, logic dictates that he must also have some possible means for obtaining it." *Smith*, 936 F.2d at 1401. Documentary evidence can be central to a prisoner putting on a defense as the evidence may prove exculpatory or lead the prisoner to other evidence or witnesses. *Lennear*, 937 F.3d at 269. The evidence may also corroborate a prisoner's version of events, which may be invaluable in presenting a defense as an accused inmate "obviously face[s] a severe credibility problem when trying to disprove the charges of a prison guard." *Id.* (quoting *Hayes v. Walker*, 555 F.2d 625, 630 (7th Cir. 1977)).

We have held that a prisoner's right to call a witness in a disciplinary process, as articulated in *Wolff*, means that the prison may not impose a prohibition on witnesses being present to testify. *Mitchell v. Dupnik*, 75 F.3d 517, 525 (9th Cir. 1996) ("[A] blanket denial of permission for an inmate

to have witnesses physically present during disciplinary hearings is impermissible, even where jail authorities provide for interviewing of witnesses outside the disciplinary procedure."). The same is true with documentary evidence. The right referenced in *Wolff* to "present documentary evidence in" the prisoner's own defense must generally include the ability to obtain that documentary evidence in the first place. *Wolff*, 418 U.S. at 566. Similarly, if a prisoner is to be able to respond to evidence presented against him, as a general proposition he should be allowed to know what it is and to examine it, unless there is reason to the contrary.

To be clear, a prisoner's right to access and prepare evidence for a disciplinary hearing is not unlimited nor unfettered. It may be limited by prison officials if they have a "legitimate penological reason." *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992). If granting a prisoner access to the requested evidence would "be unduly hazardous to institutional safety or correctional goals," access may be denied. *Wolff*, 418 U.S. at 566.

The penological reason must be legitimate, though, not merely pretense or pretext. The denial of access may not be arbitrary as "[t]he touchstone of due process is protection of the individual against arbitrary action of government." *Id.* at 558.

For example, labeling a document "confidential" without real confidentiality concerns is not a "legitimate penological reason." The mere label "confidential" attached by prison officials without logical foundation cannot be used to prohibit a prisoner from accessing evidence to be used in a disciplinary hearing. *See Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003) (holding that refusing a prisoner access to a

tape as "consistent with the Department of Correction's procedure of keeping security tapes confidential," without more, is not a "security reason" for withholding access). Further, administrative efficiency is not an adequate justification for denying a prisoner access to evidence to be used in forming his defense. *See Bostic v. Carlson*, 884 F.2d 1267, 1273 (9th Cir. 1989) ("[P]rison disciplinary committees may not deny [inmates] the right to call important witnesses solely for the sake of administrative efficiency."), *overruled on other grounds by Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016) (en banc).

Prison officials may be required to provide an explanation when they deny a prisoner access to evidence, either in the administrative record or through testimony in court if the denial is challenged. *Zimmerlee v. Keeney*, 831 F.2d 183, 187 (9th Cir. 1987) ("The reasons for denying . . . a request to present witnesses or documentary evidence may be made by prison officials either at the hearing or at a later time."); *see also Ponte v. Real*, 471 U.S. 491, 497–500 (1985) (requiring prison officials to explain why a prisoner was denied the right to call witnesses). Without such an explanation, a prison official's decision to deny access would effectively be made unreviewable by courts. *See id.* at 498–500. The due process rights of prisoners may not be so simply circumvented.

The prison might, for example, require a prisoner to make an affirmative request for access to evidence he may intend to use in his defense or that is expected to be used against him. The request need not be extremely detailed, particularly if the prisoner has no way of ascertaining or describing the precise form of the evidence he seeks, but it should be sufficient to put the prison official on notice of what is sought. *Cf. Davis v. United States*, 512 U.S. 452, 459 (1994)

(holding that to invoke the right to counsel, a suspect must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney"). For example, requesting the right to inspect a document should be understood to include the alternative of a copy of a document whether it be in the form of a photocopy, a photograph, or something else, unless the prisoner specifically indicates that only the original will do.

Applying this first prong of the qualified immunity analysis to the facts of this case, we conclude that Melnik had a constitutional right to see the envelopes or copies of them, as they were evidence to be used in his prison disciplinary hearing. Melnik had a protected liberty interest at stake as he faced administrative segregation. *Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014) (holding that administrative segregation "implicate[s] a protected liberty interest giving rise to procedural due process protections"). He requested the evidence with sufficient clarity. No legitimate penological reason was identified to justify the denial of access. Melnik had a constitutional due process right that was violated, so Defendants cannot prevail on the first qualified immunity prong.

## B.  *Clearly Established Right*

Defendants in this case focus their challenge to the district court's denial of qualified immunity on the second prong of the analysis, the "clearly established" element, and on only part of that prong. Defendants concede that a prisoner has a general right to access evidence and that the right was clearly established when Melnik made his first request for copies of the envelopes. Further, Defendants concede that "[h]ad the[]

envelopes simply been in Melnik's file, this would be an entirely different story. This [denial of access] would have been arbitrary and malicious." Instead, Defendants raise two "wrinkles," to use their term, based on specific facts in this case that, they argue, meant that the right asserted by Melnik was not clearly established when Melnik requested copies of the envelopes.[2]

Melnik argues that these factors were not raised before the district court and should not be considered by this court. It is true that the arguments now relied on by Defendants were not raised below, but we have discretion to consider such arguments if they present purely legal questions. *See Cold Mountain v. Garber*, 375 F.3d 884, 891 (9th Cir. 2004). As these arguments appear to be questions of law, we exercise discretion to consider them. They do not persuade us that Defendants are entitled to qualified immunity.

---

**[2]** The dissent creates arguments for Defendants that they did not make and, indeed, affirmatively rejected. Dissent at 22–23; *see* Oral Argument at 8:20–8:55 (conceding that the right to disclosure of evidence was clearly established, as a general matter, but distinguishing this instance only because the documentary evidence at issue here was held in a vault, though photographic copies were available). "Our circuit has repeatedly admonished that we cannot 'manufacture arguments for an appellant. . . .'" *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)); *see United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579, 1581–82 (2020) (reversing a decision of this court for failure to follow the principle of party presentation). We decline the dissent's invitation to do so here. To be clear, we have not been persuaded by the argument presented in the dissent and would reach the same conclusion even if it was appropriate for us to consider it, but it is not, so we will not discuss it further.

The first factor Defendants raise is that the envelopes at issue were stored by Defendants in an evidentiary vault for use in possible criminal proceedings, and that location meant that Melnik's right to access copies of the envelopes was not clearly established. At oral argument, Defendants explained for the first time that the envelopes being placed in the vault made them confidential under Nevada Department of Corrections' Administrative Regulation 708.01. That provision states that "[a]ll evidence, documents, and information related to criminal prosecution referrals are confidential . . . ."

Withholding confidential information from a prisoner may be a legitimate penological reason for denying a prisoner access to evidence. Defendants have not, however, identified anything that justified keeping these envelopes confidential from Melnik. He was charged with smuggling drugs in those envelopes and was ultimately held responsible for the contents of the envelopes, presumably because he arranged for someone outside the prison to hide the drugs in the envelopes and mail them to him. If he was responsible for that action, then it is difficult to understand what information could have been revealed by the envelopes that needed to be kept confidential from him. The envelopes would have revealed that they were addressed to Melnik, but that was not information that had been or could be withheld from him. It was the thrust of the charges against him. Each envelope would also presumably have shown the name of the sender and a return address, but if Melnik was responsible for the mailing, that would not have been something that logically needed to be withheld from him either, as he would have already known from whom the drugs came.

We pressed Defendants on this issue at oral argument and did not receive a persuasive response. Indeed, Defendants appear to admit that the envelopes were labeled confidential based on the location where they were stored rather than based on any confidential attributes of the envelopes themselves. Defendants conceded that the envelopes could not have properly been withheld if they had been kept in Melnik's file. Where Defendants decided for themselves to store the envelopes did not make them confidential. As noted above, neither a confidential label nor administrative convenience provides reason to withhold evidence.

More broadly, the fact that a matter could possibly be referred for criminal prosecution cannot logically serve as a valid basis to keep from a prisoner charged with a disciplinary violation all evidence related to the alleged violation. If it could, then prisons could avoid any obligations under *Wolff* by noting a possibility of referral for prosecution. Defendants were not required to proceed with the prison discipline in the meantime, but having decided to do so, they could not withhold all information about the incident from the prisoner based only on the possibility of a future criminal prosecution. That would run afoul of the notice requirement clearly articulated in *Wolff*. *See* 418 U.S. at 564.

Melnik was informed of the prison disciplinary charges and thus knew he was charged with responsibility for the envelopes that contained drugs. The existence of Nevada Department of Corrections' Administrative Regulation 708.01 and the possibility of a referral for criminal prosecution does not provide any logical explanation for why he needed to be denied access to the envelopes or a copy of the envelopes. More precisely, it fails to provide any

legitimate penological reason for denying him the ability to see them.

Further, Defendants admitted at oral argument that prison officials could still access materials in the vault, though approval by other agencies may have been required. In addition, they admitted that prison officials already had photographs of at least the front of the envelopes, which could have been shown or made available to Melnik. Again, administrative convenience is not an adequate justification for denying a prisoner access to evidence. Any difficulty in making copies once the envelopes were in the vault was not a valid reason to deny Melnik access to them. *See Bostic*, 884 F.2d at 1273. Defendants did not withhold copies of the envelopes for legitimate penological reasons.

Defendants also advanced another argument at oral argument—that Melnik requested a "copy" of the envelopes rather than a copy of photographs of the envelopes, a request the prison officials would have been able to honor without accessing the envelopes in the vault. This relates to the specificity of the request made by Melnik. He requested a "copy" or "photocopy" of the envelopes, in doing so he was clearly requesting to view an accurate image of the envelopes, regardless of how that image was created. This semantic difference did not make the right Defendants concede was clearly established any less clear.

Defendants acknowledge, absent these wrinkles, that the right was clearly established such that they were on notice of the obligation to provide access to or copies of the envelopes to Melnik. We conclude that his right to access that documentary evidence was clearly established and that the

factors pointed to by Defendants did not make the right any less clear.

## III.    Conclusion

We affirm the district court's holding that Defendants are not entitled to qualified immunity. The case is remanded to district court for further proceedings.

**AFFIRMED and REMANDED.**

---

BENNETT, Circuit Judge, dissenting:

I agree that prisoners in disciplinary proceedings now have a qualified right to access the prison's evidence against them. Majority Opinion at 7. But in my view, that right was established in our circuit today—by the majority's opinion. Because defendants did not violate clearly established law, I would hold that defendants are entitled to qualified immunity. I therefore respectfully dissent.

A right is clearly established if it has a "sufficiently clear foundation in then-existing precedent." *Nunes v. Arata, Swingle, Van Egmond & Goodwin (PLC)*, 983 F.3d 1108, 1112 (9th Cir. 2020) (per curiam) (citation omitted). "It is not enough that the rule is *suggested* by then-existing precedent." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (emphasis added). Rather, the rule must be "settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* at 589–90 (quotation marks and citations omitted). "There need not be a case directly on point, but

existing precedent must place the statutory or constitutional question *beyond debate*." *Nunes*, 983 F.3d at 1112 (emphasis added) (quotation marks and citation omitted). In other words, "[t]he precedent must be clear enough that *every* reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 138 S. Ct. at 590 (emphasis added).

The Supreme Court has not clearly established a prisoner's right to access the evidence against him in a disciplinary proceeding. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court recognized that a prisoner facing disciplinary proceedings has the right to: (1) advanced written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence in his defense, consistent with institutional safety or correctional goals; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Id.* at 563–66. Nowhere in *Wolff* did the Court decide that a prisoner must also have access to the prison's evidence against him. The majority suggests that *Wolff* implicitly recognized a prisoner's right to compile evidence in his defense. Majority Opinion at 8. But I doubt a passing comment on the prison's ability to limit the compilation of evidence can constitute a clearly established right. *See Wolff*, 418 U.S. at 566.

That is all the more so because *Wolff* was not decided on a blank slate. The court of appeals in *Wolff* required the prison to provide the same due process protections as those afforded to parolees facing parole revocation. *See id.* at 559. Those protections were established in *Morrissey v. Brewer*, 408 U.S. 471 (1972), and they are:

(a) written notice of the claimed violations of parole; (b) *disclosure to the parolee of evidence against him*; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses . . . ; (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489 (emphasis added). The Supreme Court reversed the court of appeals and decided that only *some* of the *Morrissey* factors apply in a prison disciplinary proceeding. *See Wolff*, 418 U.S. at 560–62. Understanding that the *Wolff* rights are a subset of the *Morrissey* factors leads to two natural conclusions. First, the right to call witnesses and present documentary evidence does not include a prisoner's right to disclosure of evidence against him, lest the second *Morrissey* factor be redundant. Second, the Court in *Wolff* did not adopt the second *Morrissey* factor. *See id.* at 563–66. And the disciplinary process in *Wolff* did not otherwise require disclosure of evidence. *See id.* at 552–53. Thus, the Court held that a prison disciplinary process that did not require disclosure of the prison's evidence against a prisoner could still satisfy due process. Thus, I do not read *Wolff* as clearly establishing any right that would allow Melnik to compel access to the prison's evidence against him.

Nor can I locate such a right in our circuit's caselaw. There are many published decisions that discuss the rights that *Wolff* did establish, such as the qualified right to call

witnesses and present evidence. *See Zimmerlee v. Keeney*, 831 F.2d 183, 187 (9th Cir. 1987) (per curiam); *Bostic v. Carlson*, 884 F.2d 1267, 1273 (9th Cir. 1989), *overruled on other grounds by Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016) (en banc); *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992) (per curiam). But there are no published cases that discuss whether the prison must disclose its evidence. Thus, it is hardly surprising that the majority cannot cite a single Supreme Court or Ninth Circuit case that establishes a prisoner's right to access the prison's evidence (let alone identify when that right was established in our circuit). Majority Opinion at 8–12. Instead, every cited case either comes from out of circuit or concerns one of the expressly enumerated *Wolff* rights.

Of course, "we may look at unpublished decisions and the law of other circuits, in addition to Ninth Circuit precedent." *Prison Legal News v. Lehman*, 397 F.3d 692, 702 (9th Cir. 2005). But even that persuasive authority is unclear. Our unpublished decisions are conflicted on whether a prisoner can compel the prison to disclose its evidence against him. *Compare Sherrod v. Rardin*, No. 99-56634, 2000 WL 1228999, at \*1 (9th Cir. Aug. 29, 2000) (requiring prison to grant access to videotape evidence), *with Sivak v. Cluney*, No. 91-35236, 1992 WL 259239, at \*2 (9th Cir. Oct. 5, 1992) (finding that a prison had no obligation to disclose all the evidence against the prisoner). And although the majority correctly notes that several other circuits have recognized that prisoners must be able to access the prison's evidence, the Fourth Circuit is only a recent member of that group. Majority Opinion at 8. A qualified right of access to evidence is *now* clearly established in the Fourth Circuit, *see Lennear v. Wilson*, 937 F.3d 257, 269 (4th Cir. 2019), but that was not the case in 2015, when the Nevada prison officials denied

Melnik access to the letter. At that time, the controlling Fourth Circuit law was *Young v. Lynch*, 846 F.2d 960 (4th Cir. 1988). In *Young*, prison officials denied a prisoner's request to produce a cigarette butt that was evidence of his violation, and the court held there was no "clearly established right to demand production of physical evidence." *Id.* at 961, 963 (explaining that *Wolff* "does not explicitly confer this right," *id.* at 963). The *Young* court ultimately declined to decide whether such a right exists, but it noted that *Wolff* was "not controlling" in this context. *Id.* at 963–64; *see also Tyler v. Hooks*, 945 F.3d 159, 169 (4th Cir. 2019) (interpreting *Young*).

So, in sum, we have no Supreme Court and no Ninth Circuit precedent establishing the right. A majority of other circuits recognize the right, but as of 2015, at least one circuit had declined to do so. And our unpublished decisions conflict as to whether the right exists. Even if this precedent might *suggest* the right exists, the "clearly established" inquiry asks whether the existence of the right has been placed *beyond debate*. I believe the precedent here falls far short of that standard. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (finding a rule not clearly established where "[n]either this court nor the Supreme Court has addressed [the] question" and "other Circuit Courts of Appeal have split on similar questions"). There are panels of our own circuit and a published decision from another circuit that disagree with the majority's opinion. In these circumstances, we cannot ask state officials to predict which decisions are right and which decisions are wrong. *See Wilson v. Layne*, 526 U.S. 603, 618 (1999) ("If judges . . . disagree on a constitutional question, it is unfair to subject

[state officials] to money damages for picking the losing side of the controversy.").**[1]**

Nor is it fair to say that the defendants were on notice that the right was clearly established because the prison regulations require disclosure of evidence. *Cf. Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1164–65 (9th Cir. 2020). Nevada Department of Corrections Administrative Regulation 707 ("AR 707") provides that "the inmate shall receive copies of any evidentiary documents, which the Disciplinary Hearing Officer considers, except in cases where non-disclosure has been approved under the 'confidential information' provisions of this Code." But AR 707 is not descriptive of the prisoner's constitutional rights. *See Furnace v. Sullivan*, 705 F.3d 1021, 1027 (9th Cir. 2013). AR 707 doesn't even align with the constitutional right as described in the majority's opinion, which allows the prison to limit disclosure for reasons other than confidentiality. Majority Opinion at 10. Moreover, the rules and regulations concerning the disclosure of evidence often extend much further than the Constitution requires. *See United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013) ("[Federal Rule of Criminal Procedure] 16 is . . . broader than *Brady*."). Thus, AR 707 does not put officials on notice of a prisoner's constitutional right to disclosure of evidence against him.

Rather than conduct this analysis, the majority relies on the fact that defendants have "concede[d] that a prisoner has

---

**[1]** Given the conflicting persuasive authority, this is not a case in which the unconstitutionality of the defendants' conduct is so obvious as to not require a case on point. *See A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 455 (9th Cir. 2013).

a general right to access evidence and that the right was clearly established when Melnik made his first request for copies of the envelopes." Majority Opinion at 12. But whether a right was clearly established is a question of law, *see Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017), and "[w]e are not bound by a party's concession as to the meaning of the law," *United States v. Ogles*, 440 F.3d 1095, 1099 (9th Cir. 2006) (en banc). Concessions that are "likely to affect a number of cases in the circuit" do not "relieve this [c]ourt of the duty to make its own resolution of such issues." *Deen v. Darosa*, 414 F.3d 731, 734 (7th Cir. 2005) (citation omitted). Besides, we may even consider an issue sua sponte "if failure to do so would result in manifest injustice, or if the opposing party will not suffer prejudice." *Hall v. City of Los Angeles*, 697 F.3d 1059, 1071 (9th Cir. 2012). Here, there is no prejudice because the district court decided and Melnik briefed on appeal whether the right was clearly established. *See Garvin v. Cook Invs. NW, SPNWY, LLC*, 922 F.3d 1031, 1034 n.1 (9th Cir. 2019). Yet there is manifest injustice in allowing the defendants' concession to stand—it precludes future defendants from challenging whether the right was clearly established.

A state official who looked at *Wolff*, then looked at our circuit's caselaw (or lack thereof), and then resorted to nonprecedential authority, would be left with at least some uncertainty about what the rule in our circuit was before today. The consequence of the majority's decision is that six Nevada officials will be personally liable for conduct that we

have only now decided is unconstitutional.**[2]** Thus, I respectfully dissent.

---

**[2]** Some defendants do not even appear to be personally involved in the violation of Melnik's rights. For instance, James Dzurenda (the Director of Corrections) is only the recipient of Melnik's second level grievance, to which Dzurenda had not responded at the time of the complaint. *Cf. Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014). But the defendants, for some reason, have elected to litigate this case without distinguishing between individual defendants. I express no view on whether the interests of justice would (or could) allow them to change that strategy going forward.