NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

SEP 4 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MICHAEL MCNEIL,

        Plaintiff - Appellee,

  v.

DAVE MOLNAR, Investigator
General; WILLIAM GLASS,
Sergeant; DWIGHT NEVEN,
Warden; QUENTIN BYRNE, Deputy
Director,

        Defendants - Appellants,

and

ATTORNEY GENERAL OF THE STATE
OF NEVADA,

        Defendant.

No. 24-2733

D.C. No.
2:18-cv-01594-RFB-BNW

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Nevada
Richard F. Boulware, II, District Judge, Presiding

Argued and Submitted March 6, 2025
Las Vegas, Nevada

Before: RAWLINSON, MILLER, and DESAI, Circuit Judges.
Dissent by Judge MILLER.

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appellants Dave Molnar, William Glass, Dwight Neven, and Quentin Byrne (collectively, Appellants) appeal the district court's denial of qualified immunity in a § 1983 action brought by Appellee Michael McNeil (McNeil), a prisoner incarcerated within the Nevada Department of Corrections (NDOC). McNeil asserts due process violations arising from a disciplinary hearing. McNeil principally alleges that Glass, who presided over the hearing, did not permit him to call a witness during the hearing. The district court determined that (1) McNeil had a liberty interest in avoiding disciplinary segregation, (2) genuine disputes of material fact existed as to whether Appellants violated McNeil's due process rights, and (3) McNeil's right to call witnesses at the hearing was clearly established. We have jurisdiction to review the denial of qualified immunity pursuant to 28 U.S.C. § 1291, and we affirm.

"We review the district court's conclusions regarding qualified immunity *de novo* and consider all disputed facts in the light most favorable to the nonmoving party. . . ." *Williams v. City of Sparks*, 112 F.4th 635, 642 (9th Cir. 2024) (citation and internal quotation marks omitted). Prison officials are entitled to qualified immunity "unless the plaintiff raises a genuine issue of fact showing (1) a violation of a constitutional right, and (2) that the right was clearly established at the time of the defendant's alleged misconduct." *Alexander v. Nguyen*, 78 F.4th 1140, 1144 (9th Cir. 2023) (citation, alterations, and internal quotation marks omitted).

**1.** Prisoners are entitled to due process protections during disciplinary hearings, but "procedural protections adhere only where the deprivation implicates a protected liberty interest." *Brown v. Oregon Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014). Inmates have a liberty interest in avoiding certain conditions of confinement "if the challenged condition imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Ashker v. Newsom*, 81 F.4th 863, 887 (9th Cir. 2023) (citation and internal quotation marks omitted). We look to three considerations in determining whether conditions are atypical and significant:

> 1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; 2) the duration of the condition and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

> *Id.* (citation omitted).

McNeil has a liberty interest in avoiding the conditions of disciplinary segregation because the conditions imposed were atypical and significant when compared to administrative segregation at the prison. McNeil alleges that he was housed in solitary confinement 23 hours per day, was not allowed any visitation for one year, and was allowed out of his cell only for three showers per week, medical appointments, and hearings, among other conditions. By contrast, inmates in Administrative Segregation are allowed contact visits and a minimum of seven

3                                                                 24-2733

hours of exercise per week. McNeil was sentenced to disciplinary segregation for 24 months but was released from segregation after eight months, following reviews of his sentence.

The conditions McNeil faced are analogous to the conditions faced by the inmate in *Brown*, who was housed in solitary confinement for "more than twenty-three hours per day," denied interpersonal contact, and denied access to the prison and law libraries, group religious worship, and educational opportunities, among other restrictions. 751 F.3d at 985. McNeil's visitation conditions were even more restrictive than those in *Brown* because McNeil was not allowed any visitors for one year, while the inmate in *Brown* received "two non-contact visits per month." *Id.* at 985. Taken together, and compared to administrative segregation at the prison, McNeil's loss of all visitation rights and the other restrictive conditions of his solitary confinement implicated a liberty interest. *See id.* at 988. Accordingly, procedural due process protections adhered to McNeil's disciplinary hearing. *See id.* at 987.[1]

**2.** As discussed, McNeil had a due process right to call a witness to effectively present his defense. *See Wolff v. McDonnell*, 418 U.S. 539, 566 (1976).

---

[1] Our dissenting colleague would distinguish *Brown* as clearly established precedent. However, to be clearly established, precedent need not be "on all fours with the facts at issue." *Bird v. Dzurenda*, 131 F.4th 787, 790 (9th Cir. 2025) (citation and internal quotation marks omitted).

Glass violated this right by not permitting McNeil to question the witness at the hearing. The fact that Glass questioned the witness is insufficient to satisfy due process because McNeil should have been afforded the opportunity to question the witness himself. *See Melnik v. Dzurenda*, 14 F.4th 981, 986 (9th Cir. 2021). Prisoners do not have an unfettered right to call witnesses, and prison officials may limit that right if they proffer a "legitimate penological reason." *Id.* (citation omitted). But Glass proffered no legitimate penological reason for depriving McNeil of the opportunity to personally question his desired witness.

Additionally, McNeil alleged that Molnar withheld requested evidence and directed Glass to find him guilty. *See id.* at 986–97. McNeil also asserts that during the appeals process, Neven and Byrne both ratified Glass's unconstitutional conduct by affirming the discipline imposed, in violation of McNeil's due process rights. These allegations support a conclusion that McNeil's due process rights were violated. *See Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (explaining that supervisors may be liable for their "acquiescence in the constitutional deprivation").

**3.** McNeil's right to call a witness at his disciplinary hearing and present evidence was clearly established by *Wolff*, 418 U.S. at 566 and *Mitchell v. Dupnik*, 75 F.3d 517, 525 (9th Cir. 1996). Accordingly, the district court properly denied qualified immunity. *See Melnik*, 14 F.4th at 990.

**AFFIRMED.**

*McNeil v. Molnar, et al.*, No. 24-2733

MILLER, Circuit Judge, dissenting:

Michael McNeil, a Nevada prison inmate, alleges that his disciplinary proceeding deprived him of due process. But it was not clearly established that the eight months of disciplinary segregation that he served as a result of that proceeding gave rise to a protected liberty interest. For that reason, the defendant officers were entitled to qualified immunity, and I would reverse the district court's decision denying their motion for summary judgment.

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) (quoting U.S. Const. amend. XIV, § 1). An inmate can bring a due process claim based on a disciplinary proceeding "only where the deprivation implicates a protected liberty interest—that is, where the conditions of confinement impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Brown v. Oregon Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "[T]here 'is no single standard' for determining when circumstances are atypical and significant." *Ashker v. Newsom*, 81 F.4th 863, 887 (9th Cir. 2023) (quoting *Johnson v. Ryan*, 55 F.4th 1167, 1195 (9th Cir. 2022)).

To overcome qualified immunity, McNeil must show not only that the defendants violated his due-process right but also that the right was clearly established at the time. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). And that clearly established right must not be defined "at a high level of generality." *Id.*

McNeil has identified no case that is "'particularized' to the facts of" his disciplinary segregation that clearly establishes that its conditions were atypical and significant. *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). He argues that *Brown* does the job. 751 F.3d 983. He points out that the inmate in that case, like him, was punished with more than 23 hours a day of solitary confinement and with removal of most privileges. *See id.* at 988. But in *Brown*, we declined to resolve whether those same features, which "might apply to most solitary-confinement facilities," were atypical and significant. *Id.* Instead, it was "the duration of Brown's confinement"—27 months with no periodic review—that was the "crucial factor." *Id.* Although McNeil was sanctioned with 24 months of disciplinary segregation, it is undisputed that he ultimately spent less than eight months in that form of confinement and that his sanction was reviewed twice during that period. Given our reliance in *Brown* on the duration of disciplinary segregation and the lack of review, that case did not clearly establish that segregation that lasts less than a third as long, combined with periodic review, gives rise to a protected liberty interest.

Because the existence of McNeil's protected liberty interest was not clearly established at the time of the defendants' alleged violations, I would hold that the defendants are entitled to qualified immunity.